IN THE UNITED STATES DISTRICT COURT
FOR WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
No. 3:14-CV-00537-RJC-DCK

INDUSTRIAL PIPING, INC.,

                Plaintiff,

v.

TAO (MIKE) ZHANG, DAYI (SEAN) LIU,
SCOTT PAUL, TIANWEI NEW ENERGY
HOLDINGS CO., LTD., and DOES 1-10,

                Defendants.

**MEMORANDUM IN SUPPORT OF
SCOTT PAUL'S MOTIONS TO DISMISS
FIRST AMENDED COMPLAINT OR, IN
THE ALTERNATIVE, TO TRANSFER
VENUE**

**Fed. R. Civ. P. 8(a)(2), 9(b) and 12(b)(2),
(3), (4), (5) and (6); 28 U.S.C. § 1404(a),
1406(a)**

INDEX

NATURE OF CASE .................................................................................................1

PROCEDURAL SUMMARY ...................................................................................2

PERTINENT FACTS ALLEGED IN THE FIRST AMENDED COMPLAINT...........................3

ARGUMENT .............................................................................................................5

I.      THIS COURT LACKS PERSON JURISDICTION OVER MR. PAUL ...........................5

II.     IF THE COURT FINDS IT HAS PERSONAL JURISDICTION OVER
        MR. PAUL, DISMISSAL IS STILL PROPER BECAUSE PLAINTIFF HAS
        FAILED TO STATE A CLAIM....................................................................7

        A.     Under the Economic Loss Rule, Mr. Paul is Not Liable for Negligent
            Misrepresentation Because He Owed No Duty to IPI, and the Claim
            Lacks Plausibility...................................................................................8

            1.     Mr. Paul Owed No Duty of Care to IPI. .......................................8

            2.     The Claim of Negligent Misrepresentation is Insufficiently
                 Plausible to Withstand Mr. Paul's Motion to Dismiss...................9

        B.     The Economic Loss Rule Bars IPI from Recovery under North
            Carolina's Unfair and Deceptive Trade Practices Act...........................12

i

C.    Plaintiff Fails to State a Plausible Claim for Fraud Against Mr. Paul....................13

    1.    IPI Does Not Allege a Requisite Independent Tort Against Mr. Paul........................................................................................13

    2.    The Fraud Allegations Do Not Satisfy Rule 9(b). .....................................15

III.    IF THE COURT EXERCISES JURISDICTION OVER MR. PAUL AND FINDS COGNIZABLE LEGAL CLAIMS, THEN, AS A MATTER OF LAW, THE CASE SHOULD BE DISMISSED DUE TO IMPROPER VENUE OR TRANSFERRED TO THE MORE PROPER VENUE OF IDAHO.............................................................................................................17

A.    IPI Has Already Indicated Its Willingness to Litigate Hoku-related Controversies in Idaho Via the Forum-Selection Clauses to Which It Agreed..........................................................................................................21

B.    Given the Pending Litigation in Idaho, Venue There Would Be More Convenient for the Vast Majority of Witnesses, and Access to Proof Would Be Substantially Easier. ...............................................................21

C.    If This Case is Litigated, a View of the Project Site in Idaho Will Likely Be Needed to Verify Work Completed by IPI ............................22

D.    Unique Factors Associated with the Pending Bankruptcies and Other Litigation in Idaho Also Compel Transfer..........................................23

E.    Idaho Provides an Appropriate Forum.................................................23

CONCLUSION..................................................................................................................24

CERTIFICATE OF SERVICE

## NATURE OF CASE

Plaintiff Industrial Piping, Inc. ("IPI") is a North Carolina company. In 2010, it chose to venture out of the state to work with Hoku Materials, Inc. ("Hoku Materials") to provide services and materials for a large construction project in Pocatello, Idaho. IPI and Hoku Materials ultimately entered into several contracts, and IPI agreed with Hoku Materials to litigate any disputes related to the contracts in Idaho. The contracts were financially significant, and IPI knew from the start that funding for the project ultimately was to be provided by a Chinese holding company, Tianwei New Energy Holdings Co., Ltd. ("Tianwei"). IPI did not, however, require any personal or third party guaranties for payments due to it.

Though it was paid approximately $17 million for its work and materials on the project, IPI ultimately came to regret its decisions to: venture to Idaho to work with Hoku Materials, agree to litigate disputes in Idaho, and not obtain any personal or third party guaranties. Funding from the Chinese backers of the project dried up in early 2012, and three related Hoku companies, including Hoku Materials, filed for bankruptcy protection in Pocatello, Idaho, on July 2, 2013. IPI claims Hoku Materials owed it $13 million at that point.

Because IPI does not expect to recoup all its losses in bankruptcy, it attempts here to do an end-around of the bankruptcy process by seeking payments from Mr. Scott Paul, a former Hoku executive, and others. In doing so, IPI brings this suit in an improper venue and attempts to transmogrify what is a breach of (corporate) contract claim into a tort claim against Mr. Paul. IPI's attempt fails as a matter of law for four primary reasons:

> *First,* Mr. Paul, who is a resident of Hawaii and who has never done business in North Carolina, lacks any nexus with the forum state. Thus, this Court does not have personal jurisdiction over him;

> *Second,* Mr. Paul owed no duty to IPI;

1

*Third,* IPI's claims of reliance are impermissibly implausible given the admissions made in this very complaint; moreover, certain essential facts are not, and cannot, be plead with sufficient particularity;

*Fourth,* there is no allegation that Mr. Paul acted independent of the contract so as to create tort liability.

Furthermore, the general contractor on the project, JH Kelly, LLC, filed a substantially similar action against Mr. Paul, as well as the other defendants in this action, in U.S. District Court in Idaho. The district court there twice dismissed that action because of a similar inability on the plaintiff's part to state a valid claim. That case is now on appeal to Ninth Circuit. There should be an identical dismissal here. While IPI may wish otherwise, this Court cannot save IPI from its decisions to venture out of the state, to agree to litigate disputes in Idaho, or from its own failure to obtain personal or third party guaranties.

In the alternative, this case belongs if anywhere in Idaho where jurisdiction exists and venue is proper. If this Court does not dismiss IPI's claim, Mr. Paul respectfully requests that the Court transfer this matter to the Idaho District Court where related claims have been made and where IPI agreed that disputes related to the underlying contracts would be litigated.

## PROCEDURAL SUMMARY

Plaintiff IPI originally filed its Complaint in this matter on September 30, 2014 (Document No. 1). Defendant Scott Paul filed motions to dismiss the IPI Complaint or to transfer venue to Idaho and for judicial notice on December 12, 2014. The motions were supported by a contemporaneously filed memorandum of law and a Motion for Judicial Notice (collectively, the "motion papers") (Document Nos. 28, 29, 30). Rather than respond to the motion papers, IPI filed its First Amended Complaint ("FAC") on January 2, 2015 (Document No. 37). On January 12, 2015, Magistrate Judge David Keesler recommended that Mr. Paul's

2

motions be denied as moot. The Court made its recommendation of denial explicitly without prejudice so that Mr. Paul, and the other defendants, could file renewed motions related to the FAC. (Document No. 40).

Mr. Paul now moves to dismiss the FAC or to transfer venue of this action to Idaho and will be filing an Amended Motion for Judicial Notice.[1] The grounds for dismissing this action or, alternatively, transferring it to the District of Idaho are even stronger now than when first submitted because the FAC fails to cure any of the deficiencies in the Complaint that Mr. Paul described in his initial motion papers.

## PERTINENT FACTS ALLEGED IN THE FIRST AMENDED COMPLAINT

For purposes of this motion, the following pertinent facts contained in the Amended Complaint must be taken as true: Hoku Corporation was a Delaware corporation (FAC at ¶3) with its principal place of business in Hawaii (FAC at ¶6); Hoku Corporation was the parent company of a wholly owned subsidiary, Hoku Materials (FAC at ¶8); Hoku Corporation chose Pocatello, Idaho, as the site to construct a polysilicon plant (the "Project") (FAC at ¶7); Tianwei New Energy Holdings Co., Ltd. ("Tianwei") purchased a controlling interest in Hoku Corporation (FAC at ¶11) and had complete control over the Hoku Corporation and its subsidiaries beginning in December 2009 (FAC at ¶67); Hoku Corporation and Hoku Materials prepared consolidated financial statements (FAC at ¶32); Mr. Paul, a lawyer and a Hawaii resident, was once the Chief Executive Officer (until June 30, 2012) and a Director of Hoku Corporation (FAC at ¶68e); Mr. Paul once served as a Director of Hoku Materials (FAC at ¶72); Mr. Paul served on the Hoku Materials' Executive Committee (FAC at ¶82); Mr. Paul received compensation from the Hoku companies as an employee (FAC at ¶182); IPI contracted with

---

[1] Pursuant to L.Cv.R. 7.1(c)(3), Mr. Paul will refer where applicable to the Exhibits to his December 12, 2014, Motion for Judicial Notice (Document No. 29). There are, however, two additional items of which Mr. Paul asks the Court to take judicial notice. Those new documents are attached to his Amended Motion for Judicial Notice, which will be filed by February 6, 2015.

Hoku Materials for work on the Project (FAC at ¶88), all of which contracting was undertaken through Hoku corporate formalities (FAC at ¶¶128, 129); IPI received payments totaling $17 million for work on the Project (FAC at ¶302); Hoku Corporation, a publically traded company, filed a public financial report with the United States Securities and Exchange Commission on about November 25, 2011 (FAC at ¶167), a true and correct copy of which will be attached as Exhibit 1 to Mr. Paul's Amended Motion for Judicial Notice; all IPI's invoices for work on the project had not been paid in full at the time the Hoku companies filed separate bankruptcy cases in Idaho on July 2, 2013 (FAC at ¶¶302-307); the plant's construction was debt financed (FAC at ¶38), including by supply agreements (FAC at ¶¶47,48); and, on March 9, 2012, China Merchants Bank confirmed by email its approval of a $100 million loan to Hoku Materials (FAC at ¶286).

Mr. Paul recognizes the Court will construe the Amended Complaint's factual allegations in a light most favorable to IPI. *Mylan Labs., Inc v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993); *Sayman v. Lehman Bros.*, No. 3:13-cv-288-RJC-DSC, 2013 WL 6254124, at *2 (W.D.N.C. Dec. 4, 2014). In addition to the foregoing allegations of the Amended Complaint, Mr. Paul also asks the Court to take judicial notice of the documents attached as exhibits to his December 12, 2014, Motion for Judicial Notice (Document No. 29) and those exhibits attached to his forthcoming Amended Motion for Judicial Notice. Each of those exhibits to his Motions for Judicial Notice is a document filed or recorded in public records in state or federal courts or in the real property records of Bannock County, Idaho, or on the website of the United States Securities and Exchange Commission (SEC). *See Sayman,* 2013 WL 6254124 at *2, fn. 1; Fed. R. Evid. 201(b). Mr. Paul also relies on Exs. A and B to the Declaration of James B. Smith filed in this case on December 12, 2014 (Document No. 24); *see, e.g., id.* Ex. A (Doc. 24-2) at pp. 31-35 and

4

Ex. B (Doc. 24-3) at pp. 31-35 (specifying choices of forum and law in Idaho in the contracts referenced in the FAC at ¶¶96-114).

**ARGUMENT**

## I.     THIS COURT LACKS PERSONAL JURISDICTION OVER MR. PAUL.

Since Mr. Paul has objected on personal jurisdiction grounds, IPI bears the burden of proving the same by a preponderance of the evidence. *Bank of Am., N.A. v. Corporex Cos.*, No. 3:13-cv-691-RJC, 2014 WL 3731778, at *2 (W.D.N.C July 28, 2014); *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989).  Though the North Carolina long-arm statute authorizes personal jurisdiction to the extent allowed by due process, *Vishay Intertechnology, Inc. v. Delta Int'l Corp.*, 696 F.2d 1062, 1065 (4th Cir. 1982), the exercise of long arm jurisdiction over Mr. Paul in this case offends due process and traditional notions of fair play and substantial justice. Consequently, IPI's jurisdictional allegations against Mr. Paul fall short of establishing that he is subject to personal jurisdiction in this Court.  *Id.*

In the Fourth Circuit, the nexus between a non-resident corporate agent and the forum state is, by itself, too tenuous to support personal jurisdiction over the agent if all of the corporate agent's allegedly tortious conduct occurred outside the forum state.  *Columbia Briargate v. First Nat'l. Bank*, 713 F.2d 1052, 1064-65 (4th Cir. 1983).  Here, the Amended Complaint does not allege a **single** instance of any conduct, tortious or otherwise, by Mr. Paul that occurred in North Carolina.  It does not even allege any direct contact between Mr. Paul and the forum state by the use of any communication device, or that he has ever even stepped foot in North Carolina.  The FAC includes a section entitled, "IPI's Activities in North Carolina." FAC at ¶¶308-316. Glaringly absent from this section, however, is any allegation of any activity by Mr. Paul in North Carolina.

Instead, IPI alleges little more than that it contracted with Hoku Materials for all the work it did on the Idaho Project. Specifically, on pages 19 through 22 of the FAC, IPI identifies a series of contracts it entered into with Hoku Materials, each of which were executed outside of North Carolina, and were negotiated on behalf of Hoku Materials by persons other than Mr. Paul. The FAC then tries to use these contracts to support jurisdiction by claiming that Mr. Paul oversaw the work of Hoku managers (for a project being built in Idaho). These allegations do not establish a nexus between Mr. Paul and North Carolina.

There is no contention that anyone from Hoku Materials executed any of these contracts in North Carolina (they did not), or that the parties to the contracts stipulated to jurisdiction in North Carolina. The representations and promises of payment contained in Hoku Materials's contracts were made, of course, by that corporation; they are not personal guaranties, representations or promises made by Mr. Paul. Because IPI can neither allege that Mr. Paul was a party to any of the contracts, nor that he had any involvement in their execution in North Carolina, IPI cannot demonstrate that this Court has personal jurisdiction over Mr. Paul.

The holding in *Smith v. Dade Behring Holdings, Inc.*, No. 1:05-cv-86, 2007 WL 152119 (W.D.N.C. Jan. 16, 2007) is instructive. There, Magistrate Judge Howell, relying on *Columbia Briargate,* reasoned:

> Where a plaintiff seeks to assert jurisdiction over a non-resident corporate employee of a nonresident corporation, and all of the employee's alleged activities in connection with the commission of the alleged tort occurred outside the forum state, the nexus between the corporate agent and the forum state is too tenuous to support personal jurisdiction over the agent under the long-arm statute which is co-extensive with the limits of Due Process.

*Id.* at *13. The corporate employees in the *Smith* case had actually placed phone calls and/or sent letters to the plaintiff in North Carolina, but those contacts were insufficient to support personal jurisdiction. *Id.* at *11. IPI alleges even less here as to Mr. Paul. Indeed, the FAC does

6

not allege a single communication—whether in person or by mail, email or phone—that Mr. Paul had with anyone who was at the time in North Carolina. Allegations that Mr. Paul approved or ratified the actions of any person who did communicate with IPI representatives in North Carolina fall short of establishing the direct nexus needed to establish personal jurisdiction. Thus, there can be no personal jurisdiction in North Carolina over Mr. Paul. *See also id.* at *3 (district court adopting magistrate judge's recommendation to dismiss for lack of personal jurisdiction).[2]

As this Court recently recognized in the *Corporex Companies* decision, the inquiry into whether a forum state may assert specific jurisdiction focuses on the relationship between the defendant, the forum, and the litigation. *Bank of Am., N.A. v. Corporex Cos.*, 2014 WL 3731778 at *5; *see also Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775 (1984). The FAC sets forth no plausible nexus between Mr. Paul and North Carolina. The reed-thin allegations about the tenuous contacts Mr. Paul had with IPI establish that, to the extent there was any contact, it occurred outside of the forum state. Thus, the allegations in the FAC are insufficient to subject Mr. Paul to personal jurisdiction for what is essentially a claim for personal guarantor liability on the unpaid debts of the Hoku companies whom are debtors in Idaho bankruptcy proceedings.

## II. IF THE COURT FINDS IT HAS PERSONAL JURISDICTION OVER MR. PAUL, DISMISSAL IS STILL PROPER BECAUSE PLAINTIFF HAS FAILED TO STATE A CLAIM.

Since neither Mr. Paul nor the other defendants guaranteed Hoku Materials's contractual performance, IPI's remedies for its losses lie in the Idaho bankruptcy proceedings and the Idaho state court lien litigation, which it is vigorously pursuing as a creditor of Hoku Materials. It does not lie against Mr. Paul, the once CEO of the contracting entity's parent corporation, whom Plaintiff has unjustifiably sued for negligent misrepresentation, unfair and deceptive trade

---

[2] Judge Thornburg's ruling, available on Westlaw as cited herein, adopts and attaches Magistrate Judge Howell's Memorandum and Recommendation. *See* 2007 WL 152119 at *4-*19.

practices, and common law fraud.

   **A.    Under the Economic Loss Rule, Mr. Paul Is Not Liable for Negligent Misrepresentation Because He Owed No Duty to IPI, and the Claim Lacks Plausibility.**

   1.    <u>Mr. Paul Owed No Duty of Care to IPI.</u>

Under North Carolina law, the elements of a claim of negligent misrepresentation are "that the plaintiff: (1) justifiably rel[ied]; (2) to plaintiffs detriment; (3) on information prepared without reasonable care; (4) by an individual owing the plaintiff a duty of care." *Synovus Bank v. Karp*, 887 F.Supp.2d 677, 700 (W.D.N.C. 2012), *citing Guyton v. FM Lending Servs., Inc.*, 199 N.C.App. 30, 47, 681 S.E.2d 465, 478 (2009); *Hospira Inc. v. Alphagary Corp*, 194 N.C. App. 695, 700-01 671 S.E.2d 7, 12 (2009); *see also Geo Plastics v. Beacon Dev. Co.*, 434 Fed. Appx. 256, 259-60 (4th Cir. 2011; unpublished) (applying North Carolina law). "Duty is a question of law, while breach and proximate cause are generally questions of fact for the jury." *Design Res., Inc. v. Leather Indus. of Am.*, No. 1:10-CV-157, 2014 WL 4159991, at *17 (M.D.N.C. Aug. 19, 2014), *quoting Richland Sch. Dist., v. Mapton Sch. Dist*., 111 Wash. Ct. App. 377, 45 P.3d 580, 588 (2002); *see also Carsanaro v. Colvin*, 215 N.C. App. 455, 460, 716 S.E.2d 40, 45 (2011).

While IPI attempts to assert the tort of negligent misrepresentation against Mr. Paul, it seeks to recover <u>contract</u> damages from him based upon the contract amount Hoku Materials owed IPI at the time Hoku filed bankruptcy. *See* FAC at ¶¶338, 345, 361. Critically, Mr. Paul is not, and cannot be, alleged to have owed IPI a duty of care related to those losses. By analogy, North Carolina law would not support a direct breach of contract action against Mr. Paul for losses caused by a corporate contracting party's breach. *Aerospace Mfg., Inc. v. Clive Merchant Group, LLC,* No. 1:05CV00597, 2006 WL 1476906, at *2 (M.D.N.C. May 23, 2006)(relying on

*DeWitt v. Hutchins*, 309 F.Supp. 2d 743, 753 (M.D.N.C. 2004)(breach of contract claim against corporate agent dismissed for lack of personal liability to third persons)).

To recover for purely economic loss from a party not in contractual privity with it, North Carolina law requires that IPI plead and establish an "intimate nexus" between itself and Mr. Paul. Otherwise, Mr. Paul does not owe plaintiff a duty, and cannot be liable in tort for losses caused by another entity's failure to pay. *Sempione v. Provident Bank of Md.*, 75 F.3d 951, 963 (4th Cir. 1996); *see also Johnson v. Sprint Solutions, Inc.*, No. 3:08-CV-00054, 2008 WL 2949253, at *4 (W.D.N.C. Jan. 29, 2008), relying on *Mecklenburg Cnty. v. Nortel Gov't Solutions, Inc.*, No. 3:07-cv-00320-GCM, 2008 WL 906319, at *4 (W.D.N.C. April 1, 2008) (allowing recovery of purely economic loss in tort would eviscerate the distinction recognized in North Carolina between contract and tort); *accord Gandecha v. Metropolitan Prop. & Cas. Ins. Co.*, No. 5:13-CV-688-F, 2014 WL 4243797, at *6 (E.D.N.C. Aug. 26, 2014).

Here, no such intimate nexus is alleged, nor can it be. It is obvious on review of the FAC that Mr. Paul did not negotiate or sign any contract relevant here and that the persons who did sign, did so on behalf of a corporation. FAC at ¶¶100-110. Alleging that Mr. Paul oversaw Hoku's work performance does not establish contractual privity, an intimate nexus, or a duty of care owed to IPI by Mr. Paul.

2.     <u>The Claim of Negligent Misrepresentation is Insufficiently Plausible to Withstand Mr. Paul's Motion to Dismiss.</u>

Rule 8(a)(2) requires a "short and plain statement of the claim showing that the pleader is entitled to relief…" Under a Rule 12(b)(6) analysis, a complaint need not include detailed factual allegations, but it must contain sufficient facts to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 697 (2009) (plaintiff must plead facts that allow a reasonable inference of defendant's liability); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Johnson v. Honda*, No. 3:13-cv-485-RJC-DCK, 2014 WL 1654128, at *4 (W.D.N.C.

9

April 25, 2014) (applying *Iqbal/Twombly* standard to dismissal of claims). Even if Mr. Paul owed a duty to IPI, and he did not, a claim of negligent misrepresentation also requires IPI to plead and prove justifiable reliance. *Synovus Bank,* 887 F.Supp.2d at 700. IPI's negligent misrepresentation claim is implausible because the allegations, taken together, do not create a reasonable inference that IPI justifiably relied on Mr. Paul's alleged statements when it decided whether to continue working on the project. In fact, IPI has effectively pled and demonstrated that it did **not** rely upon Mr. Paul, as explained below.

To put IPI's claims in context, IPI alleges that it had been paid $17 million when payments of its invoices began to lag in October 2011. FAC at ¶237. It further admits that it was known publicly that the Hoku entities were in deep financial trouble. FAC at ¶¶166-168. Nonetheless, IPI apparently performed over 30% of the total work it claims to have done in the final three months of a fifteen month relationship (September 2010 to December 2011), and during a time period when it was not being paid. FAC at ¶¶302-306. The only reasonable inference that can be made from this is that the prior receipt of $17 million in payments weighed heavily—at least as much as any other factor—in IPI's calculus of whether to continue work, and even to step up the pace of its work, while payments were not being made.

Moreover, IPI's allegations of reliance on a statement by Mr. Paul when it was still doing significant work appears to be limited largely, if not entirely, to statements made by Mr. Paul that were relayed to IPI in an email from Defendant Zhang on November 18, 2011. FAC at ¶249. The controverted statements, however, are not factual misrepresentations. While most of the alleged statements are mere opinions, Mr. Paul also is reported to have told Mr. Zhang: "We're working hard with Tianwei to receive an allocation of what's left." FAC at ¶249. Even taking this hearsay as a correct assertion of what Mr. Paul was doing, that statement literally

informed plaintiff that Hoku did not have sufficient funds on hand to pay its invoices, hence the need for an allocation from Tianwei.

IPI must allege facts that sufficiently support justifiable reliance for its claims to survive. It fails to do so. In *Gandecha v. Metropolitan Property and Casualty Insurance Company,* No. 5:13-CV-688-F, 2014 WL 4243797, at *6 (E.D.N.C. 2014), certain allegations refuted justifiable reliance, and the negligent misrepresentation claim was properly dismissed. Here, as in the *Gandecha* case, IPI's allegations affirmatively demonstrate that it did not justifiably rely on any of Mr. Paul's assurances. IPI quotes its own Mr. Ransom in the FAC at ¶266, as stating on November 22, 2011, four days after Mr. Zhang's email: "I do need something more concrete," and "I cannot get solid information." These concessions show that plaintiff did not consider the assurances it had received as of that date as sufficient or "concrete" enough to fully inform its decision-making. These statements also flatly contradict the allegation that IPI relied on Mr. Paul's alleged oversight, conduct or statements.

Finally, IPI alleges in the FAC at ¶¶261 through 263 that "…as contemplated by Section 3.3 of the MCSA, Defendants were representing that Hoku Materials had 'adequate funds available or committed' to fulfill its payment obligations," and that, "[t]his representation was false …." IPI alleges, however, in the FAC at ¶286 that China Merchant Bank confirmed in March 2012 that it had approved a $100 million loan to the Hoku companies. This allegation demonstrates the truth of all Mr. Paul's alleged assurances that he believed Hoku Materials had adequate funds committed to pay IPI's invoices. In other words, IPI concedes it knew in late 2011 that the Hoku companies did **not** actually possess the funds needed to pay IPI, but IPI was told that the Hoku companies *believed* they would get sufficient funding to pay the debt. That hope and belief was confirmed to IPI by Tianwei's bankers in early 2012. The fact that these

loans ultimately were not funded does not render the defendants' assurances of future payment based on loan commitments false.

IPI does not allege that Mr. Paul ever told it that Hoku had sufficient money in hand to pay IPI. And Plaintiff's allegations of justifiable reliance are simply not plausible when considered in the context of all of the events alleged in the FAC. IPI has, therefore, insufficiently pled the justifiable reliance element of its negligent misrepresentations claim against Mr. Paul. *Synovus Bank v. Karp*, 887 F.Supp.2d 677, 700 (W.D.N.C. 2012).

>    **B.    The Economic Loss Rule Bars IPI from Recovery under North Carolina's Unfair and Deceptive Trade Practices Act.**

In the Fourth Circuit, it is extremely rare that an independent tort can arise when the action is essentially one for breach of contract. *Broussard v. Meineke Discount Muffler Shops, Inc.,* 155 F.3d 331, 347 (4th Cir. 1998). This Court recently applied the reasoning of *Broussard* in a case similar to this one. In *2 Hounds Design, Inc. v. Brezinski,* No. 3:13-cv-101-RJC-DCK, 2014 WL 4407015, at *9-*10 (W.D.N.C Sept. 8, 2014), the Court noted the elements of recovery under Chapter 75 of the North Carolina Statutes (the "UDTPA") are: (1) commission of an unfair or deceptive act or practice, (2) in or affecting commerce, that (3) proximately caused injury. *See also Dalton v. Camp,* 353 N.C. 647, 656, 548 S.E.2d 704, 711 (2001). It then dismissed a counterclaim based on the UDTPA as the conduct alleged was essentially a breach of contract.

A plaintiff is required to show "substantial aggravating circumstances" for an action to be elevated from a breach of contract to one for unfair or deceptive trade practices. *Griffith v. Glen Wood Co.*, 184 N.C.App. 206, 217, 646 S.E.2d 550, 558 (2007). In the *2 Hounds Design* decision, this Court turned to North Carolina state court decisions that described "substantially aggravating" conduct as consisting of egregious misdeeds such as "forged documents, lies, and fraudulent inducements." 2014 WL 4407015 at *10 (citing *Garlock v. Henson*, 112 N.C.App. 243, 246, 435 S.E.2d 114, 115-16 (1993) (forgery of bill of sale); *Foley v. L & L Int'l, Inc.,* 88

N.C.App. 710, 714, 364 S.E.2d 733, 736 (1988) (retaining deposit under false pretenses)).  In doing so, the Court heeded the Fourth Circuit's admonition against allowing unfair trade practices claims to "piggyback" on breach of contract actions.  2014 WL 4407015 at *10 (citing *Broussard,* 155 F.3d at 347).

IPI does not allege any egregious misdeeds by Mr. Paul.  To be sure, Hoku Materials failed to pay IPI's invoices in full.  FAC at ¶¶307.  This circumstance may support a breach of contract action against Hoku Materials.  It does not, however, support a claim for damages from Mr. Paul under North Carolina's UDTPA arising from statements Mr. Paul allegedly made about the delays in receiving expected financing.  On the other hand, if the $100 million China Merchant Bank loan had closed and Plaintiff could claim – and they cannot – that Mr. Paul diverted funds from those loan proceeds to his own use, rather than directing or approving payment of IPI invoices, that fact pattern might arguably constitute substantial aggravating circumstances to withstand dismissal.  No such aggravating circumstances have, however, been alleged here.  Dismissal of the UDTPA claim is, therefore, warranted.

### C.     Plaintiff Fails to State a Plausible Claim for Fraud Against Mr. Paul.

#### 1.     IPI Does Not Allege a Requisite Independent Tort Against Mr. Paul.

The FAC includes a new count alleging that the defendants made reckless or fraudulent misrepresentations.  It is, however, "inconsistent with North Carolina law and sound commercial practice" to turn a contract dispute into a fraud claim as IPI attempts here.  *Carolina Power & Light Co. v. Aspect Software*, No. 5:08-CV-00449-BO, 2009 WL 256332, at *2-*3 (E.D.N.C. Feb. 3, 2009); *Aero. Mfg., Inc. v. Clive Merchant Group, LLC,* No. 1:05CV00597, 2006 WL 1476906, at *2 (M.D.N.C. May 23, 2006)(relying on *Norman v. Tradewinds Airlines, Inc*., 286 F. Supp. 2d 575, 595 (M.D.N.C. 2003)(fraud claim dismissed for failure to plead that defendant acted with specific intent)).  Attempting to state a fraud claim against an individual agent of the

corporate contracting party stretches even further beyond what this legal principal allows.

Even assuming, *arguendo*, that a fraud claim could be stated against Mr. Paul arising out of his corporate employer's breach of contract, a key allegation missing here is that Mr. Paul had the "specific intent" to cause Hoku not to perform its obligations at the time his statements were made. Alleging falsity and knowledge of falsity is insufficient. Conclusory assertions that, at the time the purported misstatements were made, a defendant had no intent (for his corporate employer) to perform are insufficient to overcome a motion to dismiss. *Aero. Mfg.*, 2006 WL 1476906 at *2. "Broken" promises do not create even an inference that the promises were fraudulent when made. *Carolina Power*, 2009 WL 256332 at *3.

Additionally, the circumstances of the Project depicted in the FAC give every indication that Mr. Paul fully intended for Hoku Materials to pay IPI's invoices. As stated in the section entitled "Potential Avoidance Claim by Trustee" (FAC at ¶¶326-27) IPI describes tens of millions of dollars of payments made to creditors during construction. This fact, together with the fact that the Hoku companies expected to receive loan funds of $100 million in early 2012 from China Merchant Bank (FAC at ¶286), upon which Mr. Paul obviously relied, preclude a claim that he specifically intended for any Hoku company to default on its obligations.

Such an allegation of specific intent on the individual defendants' part is implausible. *Iqbal*, 556 U.S. at 697(plaintiff must plead facts that allow a reasonable inference of defendant's liability); *Twombly*, 550 U.S. at 570; *Johnson v. Honda*, 2014 WL 1654128, at *4. Obviously, Hoku Materials ultimately did not pay as it had promised. Representations, however, that funds with which to pay were committed were not only true when made (FAC at ¶286), they do not give rise to a tort that is independent from Hoku's contractual promise to pay. *Carolina Power* 2009 WL 256332 at *3; *see also Strum v. Exxon Co., USA*, 15 F.3d 327, 331-33 (4th Cir. 1994) (non-performance alone cannot support a fraud action).

14

The factual allegations required to state a fraud claim sufficiently outside the "core" of a contract are similar to the "egregious misdeeds" that must be alleged to state an actionable claim under the UDTPA when the action is rooted in contract. *See Capital Factors, Inc. v. The Fryday Club, Inc*., 209 F. Supp.2d 583 (W.D.N.C. 2002). There, the Fryday Club alleged in its counterclaim that Capital Factors deliberately misappropriated funds and failed to credit its accounts. The District Court found those allegations to be potentially independent from contractual promises, but it also required Fryday Club to allege them more specifically to comply with Fed. R. Civ Pro. 9(b). *Id*. at 585-86. The allegations against Mr. Paul lie at the core of IPI's contract with Hoku Materials, and critically, they do not depict independent conduct outside the contract core.

Plaintiff has not, and cannot, allege the "something more" that would support tort relief rather than contract damages. IPI, instead, alleges repeatedly that Mr. Paul had a pecuniary interest in the project based on his compensation package with the Hoku companies. FAC at ¶¶18, 182, 330. It does not allege, however, that his compensation was enhanced in any way by making the statements at issue; thus, the "something more" requirement is not met. This is the fundamental flaw in all of the counts in the FAC – Mr. Paul is not alleged to have acted either independent of his role as a corporate executive for the Hoku companies, or nefariously, so as to elevate a contract action into a tort claim. IPI does not allege that Mr. Paul misappropriated funds, fabricated invoices or committed any other egregious misdeed that could support the tort claims it attempts to assert.

2.     The Fraud Allegations Do Not Satisfy Rule 9(b).

Fed. R. Civ. Pro. 9(b) requires fraud claims to be stated with particularity. *Devlin v. Wells Fargo Bank, N.A*., No. 1:12–CV–000388–MR–DLH, 2014 WL 1155415, at *6 (W.D.N.C. Mar. 21, 2014). A plaintiff must plead circumstances with particularity, "…as well as the

identity of the person making the misrepresentation and what he obtained thereby." *Id*. (quoting *Harrison v. Westinghouse Savannah River Co.,* 176 F.3d 776, 784 (4th Cir. 1999)).  IPI, however, does not plead with particularity the work it did or the materials it delivered in reasonable reliance on Mr. Paul's specific statements, nor does it explain how Mr. Paul personally benefitted.  This is not an oversight.  The chronology of events laid out in the FAC establishes the impossibility of satisfying the "particularity" requirement.  For example, IPI makes allegations regarding Hoku's inability to pay on contracts when they were executed.  FAC at ¶187 *et seq.*  Millions and millions of dollars were, however, paid on those contracts.  FAC at ¶308.  Even if Hoku Material's contractual representations can be attributed to Mr. Paul – and they cannot – who benefitted from payments on those contracts?

Similarly, when payment on invoices lagged, the FAC places great reliance on a Mr. Paul's reported statements in November, 2011.  FAC at ¶¶247-249.  If one assumes that Mr. Paul was purposefully untruthful in these statements (that were not made directly to IPI) – and there is no indication that was his intent –how would he benefit by making such a misrepresentation?  At best, it presumes that Mr. Paul intended to create more debt and a more complicated bankruptcy.  Yet there is no upside for him in doing so.  Mr. Paul is only alleged to have had a pecuniary interest in the project based on his compensation package.  FAC at ¶330.  IPI does not allege that he received bonus compensation for inducing it to continue work or creating more debt, much less any nefarious conduct such as diverting loan proceeds to himself.

Finally, a plaintiff must also demonstrate the reasonableness of its reliance on the (mis)representations.  *Devlin*, 2014 WL 1155415 at *7, citing *Cobb v. Pennsylvania Life Ins. Co.,* 215 N.C. App. 268*,* 715 S.E.2d 541, 549 (2011).  Reliance is not reasonable if IPI could have discovered the true information through reasonable diligence, but failed to do so.  *Devlin*, 2014 WL 1155415 at *7.  IPI alleges it had no way of learning the truth concerning the Hoku loans

and financing. FAC at ¶153. To exercise due diligence, however, IPI was obligated to access the quarterly reports which Hoku Corporation submitted to the SEC at either the Hoku web site then online or at www.sec.gov. *See* Ex. 1 to Mr. Paul's Amended Motion for Judicial Notice. *Cf.* FAC at ¶167. In *Angell v. Kelly*, No. 1:01CV00435, 2006 WL 3479010, *8 (M.D.N.C. Nov. 23, 2006), the court, applying North Carolina law, held that information regarding what plaintiffs there claimed had been misrepresented to them was easily available to the plaintiffs in SEC reports. Here, as in *Angell*, nothing relieved IPI from its obligation to review publically available documents such as the Hoku 10 Q reports. *See also Goff v. Frank A. Ward Realty & Ins. Co*., 21 N.C. App. 25, 203 S.E.2d 65, 68 (1974).

Hoku's quarterly (10 Q) reports contained candid, sobering details about risk factors, construction financing and myriad facts that were readily available to anyone with internet access. *See also* FAC at ¶167 (referencing Hoku's 10 Q for the quarter ending September 2011). A review of these public documents would have given Mr. Ransom and IPI the more "concrete" information they desired had they exercised due diligence to obtain it. Disclosures in the 10 Q Report were also entirely consistent with Mr. Paul's statements to IPI, and they contained the detail IPI now claims it could not discover.

III.    **IF THE COURT EXERCISES JURISDICTION OVER MR. PAUL AND FINDS COGNIZABLE LEGAL CLAIMS, THEN, AS A MATTER OF LAW, THE CASE SHOULD BE DISMISSED DUE TO IMPROPER VENUE OR TRANSFERRED TO THE MORE PROPER VENUE OF IDAHO.**

The allegations of the FAC, together with the matters of which Mr. Paul has moved the Court to take judicial notice, establish that all of the events set forth below occurred in Idaho. The type, number and scope of the Idaho events constitute unique factors that the Court should consider in relation to Mr. Paul's venue arguments:

- IPI is a registered contractor in Idaho in "good standing." FAC at ¶23.

17

- IPI contracted with Hoku Materials for work it performed relating to the Project. FAC at ¶¶96-111; *See also* Exs. A and B to the Declaration of James B. Smith (Document Nos. 24-2 & -3), *especially* pp. 31-35 of said contracts (which are referenced in the FAC at ¶96), specifying choices of forum and law in Idaho.

- IPI is a lien claimant in complex Idaho state court litigation (Document No. 29, Ex. 1 [Doc. 29-2])[3] (excerpts of certified copy of Docket, Case No. CV-2012-0001123-OC, Bannock County, Idaho, indicating IPI's appearance as a counterclaimant, cross claimant and third party plaintiff; IPI's intention to proceed with the action; and a recent IPI filing). *See also* FAC at ¶321.

- Hoku Corporation and Hoku Materials each filed a bankruptcy proceeding in the U. S. Bankruptcy Court for the District of Idaho on July 2, 2013. FAC at ¶307.

- Hoku Materials estimated owing creditors $779,031,323 in bankruptcy (Document No. 29, Ex. 2 [Doc. 29-3]) (Summary of Schedules).

- IPI is a creditor in the Hoku Materials Idaho bankruptcy case (Document No. 29, Ex. 3 [Doc. 29-4]) (IPI Proof of Claim).

- IPI was a prevailing joint movant for relief from stay with another creditor, JH Kelly, LLC, in the Hoku Materials bankruptcy case (Document No. 29, Exs. 4 & 5 [Doc. Nos. 29-5 & -6]) (Joinder in Motion for Stay Relief and Order Granting Stay Relief).

- JH Kelly sued Mr. Paul and others in U. S. District Court for the District of Idaho for claims similar to IPI's and also arising out of Hoku Materials's failure to pay its invoices in full before it filed bankruptcy. *JH Kelly, LLC v. Tianwei New Energy Holdings Co., Ltd.*, No. 1:13-cv-00368-BLW, 2014 WL 5816097 (D. Idaho Nov. 10. 2014).

---

[3] Document 29 is Mr. Paul's December 12, 2014, Motion for Judicial Notice.

- JH Kelly twice lost on the defendants' motions to dismiss said action, and it has appealed the final dismissal to the United States Court of Appeals for the Ninth Circuit. (Document No. 29, Ex. 6 [Doc. No. 29-7]) (Notice of Appeal).

- Upon being sued by JH Kelly, Mr. Paul sought and obtained stay relief in the Hoku Corporation bankruptcy proceeding so that his insurer was authorized to advance the fees and costs necessary to defend that action. *In re Hoku Corp.*, Bankruptcy Case No. 13-40838-JDP, 2014 WL 1246884 (Bankr. D. Idaho Mar. 25, 2014). Mr. Paul has again moved for stay relief so the insurer is authorized to advance the costs of defending the instant action. *See* Ex. 2 to Mr. Paul's Amended Motion for Judicial Notice.

- Mr. Paul may be subject to contingent claims by over 100 other creditors in districts throughout the country, similar to the $17 million contingent claim stated by IPI in its Amended Complaint. FAC at ¶326.

- Mr. Paul may also be subject to claims in Idaho by the trustee of the Hoku Corporation bankruptcy estate. *In re Hoku Corp.*, Bankruptcy Case No. 13-40838-JDP, 2014 WL 1246884, at *4, fn. 10 (Bankr. D. Idaho Mar. 25, 2014).

- The project site, all of the books and records of both Hoku companies, witnesses, trustees and the res— that is, the funds in the Hoku bankruptcy estates available for distributions to creditors according to the lien priorities established in the lien litigation—are all present in Idaho. FAC at ¶154.

Despite knowing of all this activity in Idaho, Plaintiff alleges that venue is proper in North Carolina under 28 U.S.C. §1391(b)(2), which provides: "A civil action may be brought in … a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated." The district with a substantial connection to the instant case can only be Idaho. Creditors lost close to

19

$800 million on the construction of the Pocatello plant. *See* Document No. 29 at Ex. 2 [Doc. 29-3] (Summary of Schedules). The constellation of facts set forth in the FAC shows that a "substantial part of the events … giving rise to the claim or that a substantial part of the property that is the subject of the action" lies in Pocatello where IPI performed substantial work on the Project.

IPI alternatively alleges venue under 28 U.S.C. § 1391(b)(3), which provides venue in "… any district in which any defendant is subject to the court's personal jurisdiction with respect to such action." But Mr. Paul, as demonstrated above, is not subject to the personal jurisdiction of North Carolina.

To address cases that have been brought in improper districts, a district court, pursuant to Rule 12(b)(3), has discretion to dismiss for improper venue. *See generally* 5B Wright & Miller, *Federal Practice and Procedure: Civil 3d* § 1352 (2004). Alternatively, 28 U.S.C. § 1404(a) provides: "For the convenience of the parties and witnesses, in the interest of justice a district court, may transfer any civil action to any other district or division where it might have been brought …" Further, 28 U.S.C. § 1406(a) provides: "The district court of a district in which is filed a case laying venue in the wrong division of district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."

A district court that opts not to dismiss a complaint outright has broad discretion in deciding whether to grant a motion to transfer venue. *Brock v. Entre Computer Ctrs., Inc.*, 933 F.2d 1253, 1257 (4th Cir. 1991). The Supreme Court holds that motions for transfer of venue necessitate case-by-case considerations of convenience and fairness. *Stewart Org., Inc., v. Ricoh Corp.*, 487 U.S. 22, 29 (1988). Courts generally analyze eleven factors in deciding whether to transfer venue, but each case may involve unique factors that weigh in the decision. *CapitalSource Finance, LLC v. B&B Contractors, Inc.*, No. Civ.A DKC 2004-3739, 2005 WL

1025953, at *8 (D. Md. Apr. 28, 2005)(setting out eleven general factors). *See also Datasouth Computer Corp. v. Three Dimensional Techs., Inc*., 719 F.Supp. 446, 450-51 (W.D.N.C. 1989)(motion to transfer venue granted); *Duke Energy Fla., Inc. v. Westinghouse Elec. Co.*, No. 3:14-cv-00141-MOC-DSC, 2014 WL 2572960, at *3-*6 (W.D.N.C. Jun. 9, 2014). Several of the general factors, as well as those unique to this case, should lead the Court to transfer venue to Idaho if not dismiss it outright.

A.  **IPI Has Already Indicated Its Willingness to Litigate Hoku-related Controversies in Idaho Via the Forum-Selection Clauses to Which It Agreed.**

A plaintiff's choice of forum is generally recognized as a factor weighing against a venue transfer. Courts also recognize, however, that this factor is far from absolute and must be weighed against all relevant factors. *Corbett v. McHugh*, No. 1:11-CV-700, 2011 WL 6370997, at *1-*2 (M.D.N.C. Dec. 20, 2011). In its contracts with Hoku Materials, IPI chose Idaho as the exclusive forum for resolving any disputes, and it chose Idaho law to apply to such disputes. *See, e.g.*, Decl. of James B. Smith (Document No. 24) at Exs. A at pp. 31-35 & B, pp. 31-35 (Tank Farm and MCSA contracts; Doc. Nos. 24-2 & 24-3]). Mr. Paul was not a party to those contracts. However, since IPI seeks to hold him responsible for the representations and warranty provisions of the contracts—as asserted throughout the FAC—then IPI should be bound by these contractual forum selection and choice of law provisions. After all, Idaho was IPI's choice of forum for claims related to the Idaho project.

B.  **Given the Pending Litigation in Idaho, Venue There Would Be More Convenient for the Vast Majority of Witnesses, and Access to Proof Would Be Substantially Easier.**

An ever-increasing mountain of evidence and related materials relevant to this dispute are accumulating in Idaho. It is neigh impossible to dispute that Idaho is the most convenient location for access to virtually all sources of proof, including, *inter alia*, witnesses, documents, public records, lien priorities, and asset distributions relating to IPI's claims. Moreover, given

21

IPI's extensive, ongoing litigation in the bankruptcy and state courts of Idaho, it cannot seriously protest transfer of this matter to Idaho because of inconvenience. While it may not be convenient for Hawaii resident Mr. Paul to litigate matters in Idaho relating to his former employer's unpaid debts, he is already doing so. It is, therefore, far more convenient for Mr. Paul to litigate these issues in Idaho (and the Ninth Circuit) rather than in Idaho, the Ninth Circuit, North Carolina and potentially the Fourth Circuit all at the same time.

Finally, a denial of the motion to transfer this case to Idaho could result in as many as 100 other creditors seeking district court relief against Mr. Paul in nearly as many districts throughout the country in an effort to recover more than may be distributed in bankruptcy and/or to avoid exposure to the Idaho bankruptcy trustee's claims. FAC at ¶326. Idaho may not be perfectly convenient for all, but it is a far better venue than the worst-case scenario that involves hundreds of litigants seeking a home court advantage in their local courts.

### C. If This Case is Litigated, a View of the Project Site in Idaho Will Likely Be Needed to Verify Work Completed by IPI.

IPI claims that it did millions of dollars worth of work, and that much of it was done after Hoku stopped paying invoices. In fact, IPI claims it incurred $11 million in costs between October and December 2011, after Hoku fell behind on its payments. FAC at ¶¶303, 338. Given that IPI executed the first relevant contract in September 2010, and IPI ultimately invoiced a total of $30 million to Hoku, it seems remarkable that over 30% of the work it claims to have done was accomplished in the final three months of a fifteen-month relationship and during a time period when IPI was not being paid. FAC at ¶237. While Mr. Paul does not contest these "facts" for purposes of this motion, if this litigation proceeds, the parties will need to verify what work was actually done when, necessitating extensive access to the plant premises. The huge plant site is, of course, located in Pocatello, Idaho.

**D.** **Unique Factors Associated with the Pending Bankruptcies and Other Litigation in Idaho Also Compel Transfer.**

As discussed above, disputes related to Hoku, and even Mr. Paul, are being actively litigated in Idaho. Taking all of these pending litigations together should lead the Court to transfer venue to Idaho. While IPI's First Amended Complaint alleges it did some work in North Carolina relating to the Project, virtually all of the substantive work took place in Idaho. Moreover, the fact that litigation in Idaho will continue for the foreseeable future overwhelms all of the factors typically analyzed in a venue motion. The volume of Hoku-related litigation in Idaho is a unique circumstance that compels if not dismissal, then a transfer to the district where so many other related matters are being examined, litigated, appealed, and eventually resolved.

**E.** **Idaho Provides an Appropriate Forum.**

Transfer to Idaho is also appropriate because Plaintiff could have brought the action there in the first place, and there are impediments to jurisdiction and venue in North Carolina that do not exist in Idaho. *Porter v. Groat*, 840 F.2d 255, 258 (4th Cir. 1988) (transfer is authorized for any reason that impedes a decision on the merits). Specifically, absence of personal jurisdiction is an impediment that this Court should consider. *Jenkins v, Albuquerque Lonestar Freightliner, LLC,* 464 F. Supp.2d 491, 494-95 (E.D.N.C. 2006) (venue transfer also appropriate under 28 U.S.C. § 1404(a)); *Carefirst of Md., Inc. v. Carefirst Urgent Care Ctr., LLC*, 305 F.3d 253, 255-56 (4th Cir. 2002).

Mr. Paul and the other defendants contest personal jurisdiction in this action. If the Court were to defer ruling on his challenge to personal jurisdiction and transfer venue to Idaho, Mr. Paul's alternative motions to dismiss could be decided there. *Corbett v. McHugh*, No. 1:11-CV-700, 2011 WL 6370997, at *4 (M.D.N.C. Dec. 20, 2011). Such a transfer certainly promotes judicial efficiency as the personal jurisdiction issue would be moot.

In addition to this case, Mr. Paul potentially faces a civil suit in U.S. District court in Idaho on remand from a Ninth Circuit appeal, litigation in two Idaho bankruptcy court proceedings (with more threatened), and potential civil suits in any number of districts throughout the country on differing liability theories that, no matter how stated, attempt to hold him liable as a guarantor of debts totaling approximately $800,000,000 incurred not by him, but by his bankrupt former employer entities. Venue for any action against Scott Paul arising out of his employment relationship with the Hoku companies lies in Idaho, if it lies anywhere.

The Hoku bankruptcy proceedings in Idaho raise one additional statutory venue provision that is instructive, if not mandatory. Title 28 U.S.C. § 1409 (b) provides: "… a proceeding arising under title 11 or arising or related to a case under title 11 may be commenced in the district court in which such case is pending." This venue provision reaffirms that the instant case, which relates to Hoku's title 11 bankruptcy proceedings, could have been commenced in the District of Idaho where the bankruptcies are pending. A creditor's monetary claims against an entity with which it contracted and for which it performed, but from which it was not fully paid, should be adjudicated in the forum where the bankruptcies are proceeding. Despite having no personal guaranty from him, IPI essentially seeks to impose a form of guaranty liability on Mr. Paul for the debts owed by the Hoku companies, the debtors in Idaho bankruptcy proceedings. Claims related to those proceedings should reside, if cognizable, in the district court of Idaho. *Id*. Since they were not commenced there, they should be transferred there.

## CONCLUSION

Dismissal is warranted because Mr. Paul is not subject to personal jurisdiction in this forum, and because IPI has failed to state a plausible claim for relief against him upon which relief can be founded. Furthermore, venue in this district is improper. Ultimately, this case is integrally related to the Idaho bankruptcy proceedings of the Hoku companies and to other legal

proceedings in Idaho. To avoid double recovery, any bankruptcy estate distribution to IPI under its Proof of Claim will necessarily reduce any recovery it could achieve in this civil action.

As a matter of judicial economy, fairness to Mr. Paul, and pursuant to 28 U.S.C. 1404(a), if Mr. Paul is not dismissed from this case, it should be transferred to the District of Idaho, where it could have originally been filed. Alternatively, if venue here is found improper, the court could reserve ruling on Mr. Paul's other motions to dismiss and transfer venue to the District of Idaho, where the case could have and should have been filed.

Respectfully submitted this 4th day of February 2015.


s/ Celeste K. Miller
Celeste K. Miller
Idaho State Bar No. 2590
ck@mcdevitt-miller.com
MCDEVITT & MILLER LLP
P.O. Box 2654
Boise, ID 83701
Tel: 208-343-7500/Fax: 208-336-6912


s/ Howard Holderness
Howard Holderness
CA State Bar No. 169814
hholderness@morganlewis.com
MORGAN, LEWIS & BOCKIUS LLP
One Market, Spear Street Tower
San Francisco, CA 94105
Tel: 415-442-1740/Fax: 415-442-1001

*Attorneys for Scott Paul*

s/ John W. Ormand III
John W. Ormand III
NC State Bar No. 14160
jormand@brookspierce.com
BROOKS, PIERCE, McLENDON,
   HUMPHREY & LEONARD, L.L.P.
P.O. Box 1800
Raleigh, NC 27602
Tel: 919-839-0300/Fax: 919-839-0304

*Local Counsel for Scott Paul*

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF CAROLINA
CHARLOTTE DIVISION
No. 3:14-CV-00537

INDUSTRIAL PIPING, INC.,

                      Plaintiff,

      v.

TAO (MIKE) ZHANG, DAYI (SEAN)
LIU, SCOTT PAUL, TIANWEI NEW
ENERGY HOLDINGS CO., LTD, and
DOES 1-10,

                    Defendants.

**CERTIFICATE OF SERVICE**

I hereby that on February 4, 2015, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing: Elizabeth A. Martineau; Daniel J. Weber; Jack S. Gjording and James B. Smith.

Respectfully submitted,

s/ John W. Ormand III
John W. Ormand III
NC State Bar No. 14160
jormand@brookspierce.com
BROOKS, PIERCE, McLENDON,
  HUMPHREY & LEONARD, L.L.P.
P.O. Box 1800
Raleigh, NC  27602
Telephone:  919-839-0300
Facsimile:  919-839-0304

*Local Counsel for Scott Paul*