UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF CAROLINA
CHARLOTTE DIVISION
NO. 3:14-CV-00537-RJC-DCK

INDUSTRIAL PIPING, INC.,

            Plaintiff,

    v.

TAO (MIKE) ZHANG, DAYI (SEAN) LIU,
SCOTT PAUL, TIANWEI NEW ENERGY
HOLDINGS CO., LTD, and DOES 1-10,

            Defendants.

MEMORANDUM IN SUPPORT OF
DEFENDANTS ZHANG AND LIU'S
MOTION TO DISMISS FIRST
AMENDED COMPLAINT FOR
LACK OF PERSONAL
JURISDICTION, FAILURE TO
STATE A CLAIM, AND IMPROPER
VENUE, AND ALTERNATIVE
MOTION TO TRANSFER

INDEX

I.  PRELIMINARY STATEMENT ............................................................................1

II.  FACTUAL BACKGROUND .............................................................................2

    A.  Jurisdictional Facts......................................................................................2

    B.  Allegations of the Amended Complaint ......................................................3

III.  ARGUMENT ......................................................................................................4

    A.  This Court Lacks Personal Jurisdiction Over Defendants Liu and
        Zhang ...........................................................................................................4
        1.  No General Jurisdiction Exists Over Mr. Liu or Mr. Zhang.......................5
        2.  No Specific Jurisdiction Exists Over Mr. Liu or Mr. Zhang ......................5
            (a)  No purposeful, relevant contacts with North Carolina
                 exist...........................................................................................6
            (b)  The exercise of jurisdiction would offend traditional
                 notions of fair play and substantial justice.......................................8

    B.  The Court Should Dismiss This Action Pursuant to 28 U.S.C.
        § 1406(a) Because North Carolina is an Improper Venue.......................9

    C.  Plaintiff's Amended Complaint Should Be Dismissed for Failure to
        State a Claim on Which Relief Can Be Granted...................................10
        1.  Plaintiff's Negligent Misrepresentation Claim Is Not Viable...................11
            (a)  Plaintiff fails to sufficiently plead falsity.....................................11

i

        (b)    Plaintiff fails to sufficiently plead reliance because Plaintiff did not stop work when informed that Hoku needed loans and that Hoku needed money from Tianwei, and because Hoku's financial condition was publicly disclosed..................................................................12

        (c)    The economic loss rule bars Plaintiff's claim for negligent misrepresentation .........................................14

    2.    Plaintiff's Unfair and Deceptive Trade Practices Count Fails to State a Valid Claim .................................................................16

        (a)    Plaintiff's UDTPA claim also fails because Plaintiff has not adequately pleaded falsity and reasonable reliance ................18

        (b)    Plaintiff's UDTPA claim is barred by the economic loss rule ..........................................................................18

    3.    Plaintiff's Fraud Count Fails to State a Valid Claim .................................19

D.    In the Alternative, Venue Should Be Transferred to the District of Idaho Pursuant to 28 U.S.C. § 1404(a) Because the Underlying Construction Project Occurred There and Plaintiff Agreed to Litigate in that Forum .................................................................................................19

    1.    Convenience and the Interests of Justice Strongly Favor Transfer to the District of Idaho...................................................20

        (a)    IPI's current choice of forum should be accorded no weight because IPI already selected Idaho as the forum for any Hoku-related claims............................................21

        (b)    Most if not all of the key evidence is in Idaho.............................22

        (c)    The District of Idaho can compel the attendance of significantly more non-party witnesses, resulting in a greater opportunity for a fair trial, and lowered costs of obtaining the attendance of the witnesses ....................................23

        (d)    Litigating this action will be more efficient and less costly in Idaho.................................................................24

        (e)    Idaho has a greater interest in settling this controversy.................24

IV.    CONCLUSION.............................................................................................25

CERTIFICATE OF SERVICE

Defendants Dayi (Sean) Liu ("Liu") and Tao (Mike) Zhang ("Zhang"), through counsel, submit this memorandum of law in support of their motion to dismiss the First Amended Complaint of Industrial Piping, Inc. ("IPI") pursuant to Federal Rules of Civil Procedure 8(a)(2), 9(b), and 12(b)(2), (3) and (6), for lack of personal jurisdiction, improper venue, and failure to state a claim upon which relief can be granted, or, in the alternative, for transfer of venue to the District of Idaho under 28 U.S.C. §§ 1404(a), 1406(b) and 1409(a).

## I. PRELIMINARY STATEMENT

Plaintiff seeks to transform a breach of contract claim for sums allegedly due from Hoku Materials, Inc. ("Hoku Materials") and its parent, Hoku Corp. (together with Hoku Materials, "Hoku"), entities now in bankruptcy after the failure of a polysilicon factory construction project, into a fraud, negligent misrepresentation and unfair trade practices case. In the First Amended Complaint it filed in response to Defendants' motions to dismiss, IPI busies itself with making allegations about Hoku's contractual duties, but they only further demonstrate the true nature of this case as a contract dispute that does not support IPI's fanciful tort claims. In short, Plaintiff's effort to do an end-around by suing former Hoku officers Liu and Zhang founders on IPI's own allegations.

Dismissal is warranted because this Court lacks personal jurisdiction over Messrs. Liu and Zhang, and also because North Carolina is an improper venue. Even if this Court were to find personal jurisdiction exists and venue is proper, dismissal is still warranted because IPI makes no plausible claim for relief, contrary to the requirements of the controlling Supreme Court authority, and the claims for fraud, negligent misrepresentation and unfair trade practices are not viable. In the alternative, the Court should grant a change of venue to the District of Idaho, where Plaintiff is already litigating in the Hoku bankruptcy action and related matters.

1

# II. FACTUAL BACKGROUND

## A. Jurisdictional Facts

To challenge personal jurisdiction, Messrs. Liu and Zhang have provided declarations.[1] Those declarations and the allegations of the Amended Complaint establish the following:

Plaintiff's principal place of business is in North Carolina. Am. Cmplt. ¶ 2. Mr. Zhang is a resident of California. Am. Cmplt. ¶ 13. Mr. Zhang went to North Carolina to attend college from 2007 to 2008, but he has not subsequently returned to the State. Declaration of Tao (Mike) Zhang dated Nov. 20, 2014 (Doc. 25) (hereafter "Zhang Decl."), ¶ 2. Mr. Zhang has no bank accounts, licenses, mailing address, telephone number, employees or agents in North Carolina, and has never owned real property in North Carolina. *Id*. at ¶¶ 2-4. All of Mr. Zhang's work with respect to negotiating or performing contracts between Hoku and Plaintiff occurred in Idaho. *Id*. at ¶ 6. Any contracts he executed on behalf of Hoku Materials, he executed in Pocatello, Idaho. *Id*. The alleged first contact between Plaintiff and Hoku in May 2010 occurred before Mr. Zhang became a Hoku employee. *Id*.; *compare* Am. Cmplt. ¶ 87. Mr. Zhang had no contact or dealings with Plaintiff before becoming a Hoku employee in November 2010. *Id*.

Mr. Liu is a resident of New Jersey. Am. Cmplt. ¶ 15. Mr. Liu has never had any real property, bank accounts, licenses, mailing address, telephone number, employees or agents in North Carolina. Declaration of Dayi (Sean) Liu dated Nov. 21, 2014 (Doc. 26) (hereafter "Liu Decl."), ¶¶ 2-4. Mr. Liu has never traveled to North Carolina in connection with anything relating to Plaintiff's claims or the underlying Project. *Id*. at ¶ 5. He has been to North Carolina only once, in connection with a business meeting for his employer. *Id*. at ¶ 2. With respect to

---

[1] The declarations submitted by Defendants concerning lack of personal jurisdiction and venue do not convert their motion under Rule 12(b)(6) into one for summary judgment. *Wilson-Cook Med., Inc. v. Wilson*, 942 F.2d 247, 252 (4th Cir. 1991).

the contracts between Hoku and Plaintiff, Mr. Liu acted only in an internal and supporting role with Hoku, and his work occurred only in the State of Idaho. *Id*. at ¶ 6. Mr. Liu cannot recall having a single exchange of correspondence with Plaintiff (*id*.), and none is alleged by IPI.

**B.    Allegations of the Amended Complaint**

Hoku selected Pocatello, Idaho as the site for its polysilicon production facility (the "Project"), and construction began in 2007. Am. Cmplt. ¶¶ 7, 35. In 2009, Tianwei New Energy Holdings Co., Ltd. ("Tianwei") bought a controlling interest in Hoku. Am. Cmplt. ¶ 11. In 2010 and 2011, Plaintiff and Hoku entered six construction contracts (the "IPI Contracts"), and Plaintiff began work on the Project under Idaho contracting and building licenses. Am. Cmplt. ¶¶ 23, 87-111. The Tank Farm Contract, dated April 7, 2011, provided that litigation on any "Claim" would proceed in "any court of competent jurisdiction located in Idaho," and that Idaho would be the "exclusive jurisdiction and venue." *See* Decl. of James B. Smith dated Dec. 12, 2014 (Doc. 24) (hereafter "Smith Decl."), Ex. A (Doc. 24-2) at 37.[2] The Tank Farm Contract defines "Claim" to include disputes "arising out of or relating to" the contract. *Id*. at 5. The Master Construction Services Agreement ("MCSA"), dated September 16, 2011, contained the same choice of forum provisions. Smith Decl., Ex. B (Doc. 24-3), at 39.

In the MCSA, Hoku represented it had "sufficient working capital to complete its obligations" under the contract. Am. Cmplt. ¶ 114. There is no allegation that Hoku failed to pay IPI for its work from inception of the IPI Contracts up to some point in October 2011. In fact, Hoku continued paying to IPI until at least September, 2011. *See* Am. Cmplt. ¶¶ 104, 216-

---

[2] The contract exhibits are submitted only in support of Defendants' challenge to personal jurisdiction and venue, except to the extent Plaintiff relies on any of those contracts in its Complaint, in which case the exhibit(s) can be considered under Rule 12(b)(6) without converting the motion into one for summary judgment. *E.g.*, *Gandecha v. Metropolitan Cas. Co.*, 2014 U.S. Dist. LEXIS 118823 at *6-7 (E.D.N.C. 2014).

18. Mr. Zhang is alleged to have been the President of Hoku Materials, a Director for Hoku Corporation, and a Vice General Manager for Tianwei. Am. Cmplt. ¶ 13. Mr. Liu is alleged to have been the Vice President of Finance for Hoku Corporation, and the Accounting Manager for Tianwei. Am. Cmplt. ¶ 15.

No statements are attributed to Mr. Liu. The statements attributed to Mr. Zhang are:

- On November 18, 2011, Mr. Zhang informed Plaintiff by email that, *inter alia*, "We're working hard with Tianwei to receive an allocation of what's left," and that "Hoku/Tianwei is not a credit risk. There is just a timing issue." Am. Cmplt. ¶ 249.

- On December 5, 2011, Mr. Zhang told Plaintiff that the payment delay was a "transfer limit issue," and that funds would be available in January 2012. Am. Cmplt. ¶ 267.

- On December 8, 2011, Mr. Zhang told Plaintiff that Hoku had funding to pay Plaintiff's overdue invoices. Am. Cmplt. ¶ 268.

For its contract work from October 2011 to December 2011, Plaintiff claims it incurred costs of $11 million in reliance on these statements. Am. Cmplt. ¶ 303-04. IPI claims these statements were proved false by a public financial statement from Hoku showing that as of September 30, 2011, Hoku had $241 million in current liabilities and $10 million in current assets. Am. Cmplt. ¶¶ 167-68. Hoku filed for bankruptcy in July 2013. Am. Cmplt. ¶ 297.

Plaintiff brings claims for fraud, negligent misrepresentation and violation of the Unfair or Deceptive Trade Practices Act ("UDTPA"). Am. Cmplt. ¶¶ 328-61.

### III. ARGUMENT

The Amended Complaint should be dismissed for lack of personal jurisdiction, improper venue, and failure to state a valid claim. In the alternative, venue should be transferred to Idaho.

### A. This Court Lacks Personal Jurisdiction Over Defendants Liu and Zhang.

Because Defendants object to jurisdiction over them in North Carolina, IPI has the burden to prove personal jurisdiction by a preponderance of the evidence. *Combs v. Bakker*, 886

4

F.2d 673, 676 (4th Cir. 1989). North Carolina's long-arm statute reaches the limits of due process, and jurisdiction is therefore determined by a federal due process analysis. *Dillon v. Numismatic Funding Corp.*, 291 N.C. 674, 676, 231 S.E.2d 629, 631 (1977). To establish personal jurisdiction over a non-resident, a plaintiff must plead and prove that defendant is subject to either (1) general jurisdiction or (2) specific jurisdiction. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-16 (1984) ("Helicopteros"). As set forth below, Plaintiff cannot show that jurisdiction comports with due process under either test.

### 1. No General Jurisdiction Exists Over Mr. Liu or Mr. Zhang.

To show general jurisdiction, Plaintiff must establish that Defendants did "continuous and systematic" activities in North Carolina. *See Helicopteros*, 466 U.S. at 414-16. Establishing general jurisdiction requires satisfying a "rigorous standard." *Burleson v. Toback*, 391 F. Supp. 2d 401, 407 (M.D.N.C. 2005). Consistent with this standard, courts uniformly hold that general jurisdiction does not exist over a non-resident defendant with few business contacts in the forum state. *See*, *e.g. Fed. Ins. Co. v. Lake Shore Inc.*, 886 F.2d 654, 658 (4th Cir. 1989) (defendants had no offices, employees, business licenses, bank accounts, or real property in the forum state).

Here, there are no allegations establishing general jurisdiction in North Carolina. Neither Defendant is a resident of the State. *See* Part II.A above. Mr. Liu went to North Carolina only once, for an unrelated business meeting, and Mr. Zhang was there only to attend a few months of college, seven years ago. *Id*. Defendants do not have real property, bank accounts, mailing addresses, employees or agents in the State. *Id*. General jurisdiction over them does not exist.

### 2. No Specific Jurisdiction Exists Over Mr. Liu or Mr. Zhang.

Plaintiff also cannot establish "specific" personal jurisdiction. A court may exercise specific jurisdiction over a non-resident defendant *only* if (a) defendant purposefully avails

himself of the privileges of conducting activities within the forum state and the litigation arises from these contacts *and* (b) exercising jurisdiction over defendant will not offend traditional notions of fair play and substantial justice. *See Lesnick v. Hollingsworth & Vose Co.*, 35 F.3d 939, 945-46 (4th Cir. 1994); *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 477 (1985). Jurisdiction fails under both elements of that standard as well.

### (a) No purposeful, relevant contacts with North Carolina exist.

Purposeful availment cannot be based upon a defendant's "random," "fortuitous," or "attenuated" contacts with the forum. *Burger King Corp.*, 471 U.S. at 475. Rather, a plaintiff must demonstrate a relationship between *each* defendant, the forum, and the litigation, that is *created by each individual defendant's own actions*. *Helicopteros*, 466 U.S. at 414; *see LC America, Inc. v. Nirvana Specialty Foods, Inc.*, No. 3:13-CV-625-RJC-DCK, 2014 U.S. Dist. LEXIS 78799, at *16, 2014 WL 2586936 (W.D.N.C. Apr. 23, 2014) ("[T]he Fourth Circuit has made it clear that due process requires that a defendant's contacts with the forum state be tantamount to physical presence there.").

In the Fourth Circuit, when a suit is brought against a non-resident defendant based on his conduct as a corporate agent, there is no personal jurisdiction if the agent's alleged tortious conduct occurred outside the forum. *Columbia Briargate Co. v. First Nat'l Bank*, 713 F.2d 1052, 1064-65 (4th Cir. 1983) (requiring a "nexus between the corporate agent and the forum state"); *Smith v. Duffey*, 1:05-cv-86 (W.D.N.C. Sept. 11, 2006) (contacts insufficient to support personal jurisdiction over fraud and unfair trade practices defendants even where those corporate employees placed phone calls and sent letters to the plaintiff in North Carolina) (Doc. 27-1); *WLC, LLC v. Watkins*, 454 F. Supp. 2d 426, 436-37 (M.D.N.C. 2006) (communication between

6

two parties in furtherance of a contract, where only one party is located in the forum state, will not generally constitute purposeful contact with the forum state).

Here, Plaintiff cannot establish that Messrs. Liu or Zhang purposefully availed themselves of the privilege of conducting business in North Carolina. First, IPI does not allege that Mr. Liu made any contact with IPI or the forum state, but instead alleges only vague contacts he had with other Hoku employees. *See* Am. Cmplt. ¶¶ 134-39. IPI concedes this complete lack of contact by attempting to allege Mr. Liu's "silence" as some kind of misrepresentation. *See id.* ¶ 240. Further, Mr. Liu's work on the Project occurred entirely in Idaho and was internal to Hoku. *See* Part II.A above. IPI's vague allegations about Mr. Liu's purported intent to affect events occurring outside of North Carolina are patently insufficient to subject Mr. Liu to personal jurisdiction in this State.

As to Mr. Zhang, there is no allegation that he was involved in Hoku's initial contact with IPI in May 2010; indeed, he was not even an employee of Hoku at the time. *See* Part II.A; Zhang Decl. at ¶ 6. When Mr. Zhang did have contact with IPI, beginning in 2011, it is beyond dispute that IPI knew it was dealing with him in his capacity as an employee of Hoku. *See, e.g.,* Am. Cmplt. ¶¶ 97, 109. IPI does not allege any conduct by Mr. Zhang occurring in North Carolina, or that he ever travelled to North Carolina for the Project. Instead, Mr. Zhang's work on the IPI Contracts occurred only in Idaho. *E.g.,* Part II.A above. IPI describes only indirect and attenuated contacts with the forum, in which Mr. Zhang sent emails or placed phone calls that were received by IPI in North Carolina because the head office happened to be located here. *See* Am. Cmplt. ¶¶ 237, 249. These contacts, like those of the defendants in *Duffey*, are insufficient to establish personal jurisdiction over Mr. Zhang in North Carolina.

Mr. Zhang's work in Idaho on behalf of Hoku, and under construction contracts controlled by Idaho law, does not constitute purposeful availment of the privilege of doing business in North Carolina. *See Diamond Healthcare of Ohio, Inc. v. Humility of Mary Health Partners*, 229 F.3d 448, 452 (4th Cir. 2000) (no personal jurisdiction where the contract called for performance mainly outside of the forum, even though some acts required of the defendant necessitated its contact with the forum). On these facts, and in keeping with controlling Supreme Court precedent, the Complaint should be dismissed for lack of personal jurisdiction.

**(b)    The exercise of jurisdiction would offend traditional notions of fair play and substantial justice.**

Even if Plaintiff could establish the first prong of the test for specific jurisdiction, the exercise of jurisdiction would nonetheless offend established notions of fair play and substantial justice, which is an *independent ground* for dismissal. *Fed. Ins. Co.*, 886 F.2d at 661. To determine whether those notions would be offended, a court takes into account factors such as: (a) the burden on defendant, (b) the interest of the forum state, (c) plaintiff's interest in obtaining relief, (d) the efficient resolution of controversies as between states, and (e) the shared interests of the several states in furthering fundamental substantive social policies. *Lesnick*, 35 F.3d at 945-46.

It would be unfair to exercise jurisdiction over Defendants in North Carolina for their work on the IPI Contracts because the forum selection clauses anchor those contracts (and any resulting litigation) in Idaho. *E.g.,* Part II.B above. Further, to subject the Defendants to personal jurisdiction in North Carolina because they coordinated out-of-state contractors' work on an Idaho project and on behalf of their employer Hoku, would likely eviscerate the ability of similar corporate agents in large commercial undertakings to plan and structure their business contacts and risks. Corporate officers would be subject to the whims of their contractors and

8

would be forced to litigate unmeritorious suits, such as this one, in any state where a contractor happened to have its head office and may have received emails or telephone calls. Such an unreasonable result runs afoul of the protections afforded by the Constitution.

**B.  The Court Should Dismiss This Action Pursuant to 28 U.S.C. § 1406(a) Because North Carolina Is an Improper Venue.**

Under 28 U.S.C. § 1406(a), "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." Venue in this diversity action is governed by 28 U.S.C. § 1391(b). *See* 28 U.S.C. § 1391(a), (b). Specifically, Plaintiff claims there is venue in this district under 28 U.S.C. § 1391(b)(2) and (b)(3). Am. Cmplt. ¶ 22. However, neither of these statutes establishes proper venue in North Carolina on the facts at bar.

Section 1391(b)(2) provides that an action may be brought in a judicial district "in which a substantial part of the events or omissions giving rise to the claim occurred[.]" The burden is on the plaintiff to show venue is proper under this section. *See Jim Crockett Promotions, Inc. v. Action Media Grp., Inc.*, 751 F. Supp. 93, 99 (W.D.N.C. 1990). In determining venue under this Section, the Fourth Circuit has directed courts to review "the entire sequence of events underlying the claim." *Mitrano v. Hawes*, 377 F.3d 402, 405 (4th Cir. 2004).

Venue is not proper in North Carolina because the events that allegedly entitle Plaintiff to payment occurred in Idaho. IPI claims tort damages from alleged misrepresentations made in Idaho relating to IPI's construction of a polysilicon plant in Idaho, under a contract to be construed and litigated under the laws of Idaho, and for which construction Plaintiff was licensed in Idaho. *See* Part II.B above. Accordingly, venue is improper under Section 1391(b)(2).

9

Venue is also improper under Section 1391(b)(3). That section allows venue in a district where "any defendant is subject to the court's personal jurisdiction" and there is "no district in which the action may otherwise be brought." Because there is a district, namely Idaho, where venue is proper, Section 1391(b)(3) does not provide a basis for venue in the Western District of North Carolina. Further, Defendants Zhang and Liu are not subject to personal jurisdiction in North Carolina, while there is no dispute that the District of Idaho can exercise personal jurisdiction over them given their work on the Project in Pocatello, Idaho.[3] Accordingly, the Amended Complaint should be dismissed because proper venue does not exist in this forum.

**C.** **Plaintiff's Amended Complaint Should Be Dismissed for Failure to State a Claim on Which Relief Can Be Granted.**

In analyzing a motion to dismiss for failure to state a valid claim, a court must determine whether the complaint is legally, and factually, sufficient. *See* Fed. R. Civ. P. 12(b)(6); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). The Supreme Court identified two "working principles" for a Rule 12(b)(6) analysis in *Iqbal*, 556 U.S. at 678. First, the court need not accept as true, legal conclusions that are couched as factual allegations. *Id.* Similarly, a court need not accept as true "unwarranted inferences, unreasonable conclusions, or arguments." *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'shp*, 213 F.3d 175, 180 (4th Cir. 2000). Second, to survive a motion to dismiss, a complaint must state a plausible claim for relief, not merely a possible one. *Iqbal*, 556 U.S. at 679. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* Where a

---

[3] IPI's lawsuit is similar to one already filed against the same defendants in the District of Idaho, titled *JH Kelly, LLC v. Tianwei New Energy Holdings Co.*, et al., Case No. 4:13-cv-00368-BLW. In that case, JH Kelly, LLC sued for fraud and racketeering on the same theory of reliance that IPI pleads here. *Id.* (Doc. 1) (D. Idaho Aug. 20, 2013).

complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of entitlement to relief." *Twombly*, 550 U.S. at 557.

Since Plaintiff asserts only state-law claims, the Court, for purposes of this motion, should apply North Carolina's substantive law. *Colgan Air, Inc. v. Raytheon Aircraft Co.*, 507 F.3d 270, 275 (4th Cir. 2007).

## 1. Plaintiff's Negligent Misrepresentation Claim Is Not Viable.

A claim for negligent misrepresentation requires proof of (1) a business transaction, in which (2) an individual has a pecuniary interest, where (3) the individual supplies false information for the guidance of others (4) without exercising reasonable care, and where (5) the other party justifiably relies on that information to his detriment. *Howell v. Fisher*, 49 N.C. App. 488, 497, 272 S.E.2d 19, 25 (1985). By definition, the tort requires that the alleged tortfeasor owed the relying party a duty of care. *Raritan River Steel Co. v. Cherry, Bekaert & Holland*, 322 N.C. 200, 206, 367 S.E.2d 609, 612 (1988).

At the outset, IPI's claims against Mr. Liu fail as a matter of law because not a single statement is attributed to Mr. Liu. The claims also fail against Mr. Zhang (and all the Defendants) for failure to adequately plead reasonable reliance and falsity, and because IPI's fanciful tort claims run afoul of the economic loss doctrine.

### (a) Plaintiff fails to sufficiently plead falsity.

A claim for negligent misrepresentation cannot be sustained unless the alleged representations are shown to be false. *Brinkman v. Barrett Kays & Assocs., P.A.*, 155 N.C. App. 738, 742, 575 S.E.2d 40, 44 (2003).

IPI alleges that it was impossible for Hoku to pay IPI at the time of the alleged representations because Hoku's financial statement showed $231 million in negative working capital as of September 30, 2011. Am. Cmplt. ¶¶ 167, 178; *see also* ¶¶ 57-58 (describing

"concern[ing]" levels of negative working capital as far back as March 2009). However, the Amended Complaint establishes that Hoku continued payments to IPI until at least September 2011. *See* Am. Cmplt. ¶¶ 104, 216-18.[4] IPI's own allegations thus reveal the flaw in its logic; i.e., that negative working capital does not mean Hoku could not fund construction. Even when it had negative working capital, Hoku had some funding available and used it to pay IPI. Plaintiff attempts to plead around this pitfall with the dubious suggestion that Defendants stated Hoku had all of the money it needed to *complete* the Project, in the sense that Hoku had cash in the drawer ready to pay IPI for years of future building expenses. *See* Am. Cmplt. ¶¶ 116, 186, 277. IPI relies on conflicting allegations and "unwarranted inferences" that do not amount to a plausible claim under Rule 8 and as required by *Iqbal*.[5]

> **(b)  Plaintiff fails to sufficiently plead reliance because Plaintiff did not stop work when informed that Hoku needed loans and that Hoku needed money from Tianwei, and because Hoku's financial condition was publicly disclosed.**

Even if IPI had adequately pleaded false representations – and it does not – IPI cannot meet its burden to show actual reliance that was reasonable. *See Sullivan v. Mebane Packaging Grp., Inc.*, 158 N.C. App. 19, 26, 581 S.E.2d 452, 458 (2003) (reliance not reasonable where plaintiff would have discovered the truth of the matter through reasonable diligence, but failed to investigate); *see also Broussard v. Meineke Disc. Muffler Shops*, 155 F.3d 331, 341 (4th Cir. 1998) (noting that under North Carolina law, "if a plaintiff has an alternative source for the information that is alleged to have been concealed from or misrepresented to him, his ignorance or reliance on any misinformation is not reasonable.")

---

[4] *See also* Pf's Complaint (Doc. 1) at ¶ 32 ("In October 2011, Hoku began to fall behind in making payments to IPI.").

[5] Like the claim for unpaid invoices, the claim for "Contingent Avoidance Damages" (Am. Cmplt. ¶ 327) fails because Plaintiff has not established falsity of the alleged misrepresentations at the time they were made. It also fails because Plaintiff does not allege how or when any such (potential) damages were caused by the Defendants. *Howell*, 272 S.E.2d at 25.

First, the reliance claimed by IPI simply did not exist. IPI's entire case rests on the allegation that IPI would have stopped work on the Project if it had known that Hoku itself did not possess the funds to pay IPI. *See* Am. Cmplt. ¶¶ 241, 242, 258, 261. Yet IPI proves its own theory false by admitting it continued working even after Mr. Zhang informed IPI on November 18, 2011 that Hoku was "working hard with Tianwei to receive an allocation" of money. Am. Cmplt. ¶ 249. Thus, IPI continued work while knowing that the money to pay its overdue invoices had not yet been received from Tianwei. Mr. Zhang stated precisely that Hoku itself did not have the money, a fact that IPI now claims was a surprise. *See* Am. Cmplt. ¶¶ 254-56. Because IPI continued working despite the knowledge that Hoku did not have sufficient funds to pay it, the Individual Defendants cannot be held liable for that decision.

This is not an isolated inconsistency. The Amended Complaint also informs the Court that IPI continued work *again* in February 2012, after Defendants explained that Hoku would have to "borrow funds in order to pay IPI[.]" Am. Cmplt. ¶¶ 281-95. IPI blames its losses on being "unaware of the loans to Hoku Corporation" (Am. Cmplt. ¶ 256), yet when IPI became aware that Hoku did not already have the money and was relying on borrowing new money, IPI kept working, just as it had done before. IPI cannot explain away these conflicts, which are fatal to IPI's theories of reliance and loss causation.

Second, IPI cannot plausibly allege that it had "limited means for ascertaining the financial condition" of Hoku, when that financial condition (i.e. negative working capital) was publicly disclosed in Hoku's SEC filings along with a full financial forecast. *See* Am. Cmplt. ¶¶ 57, 236; *Angell v. Kelly*, 2006 U.S. Dist. LEXIS 87567, at 30, 2006 WL 3479010 (M.D.N.C. Nov. 30, 2006) (plaintiff's reliance on alleged misrepresentations unreasonable when publicly available documents were available to investigate and confirm the defendants' statements).

Hoku's financial condition was not within the exclusive knowledge of Defendants, as IPI claims, but was instead a matter of easily accessible public record. The report cited by IPI, an 82-page 10-Q filed November 25, 2011,[6] is entirely consistent with the alleged statements, and further confirms that Tianwei was committed to support Hoku financially and for its working capital needs until at least April 1, 2012. *See* Defs' Am. Mot. for Judicial Notice, Ex. 1, at 41-42.

There can be no dispute that Hoku's "true financial condition" was easily available to IPI, which itself was a sophisticated business party, and on notice of Hoku's payment delay. Moreover, IPI continued work when it knew that Hoku needed new loans to pay IPI. Am. Cmplt. ¶¶ 282-94. Thus, IPI fails to plausibly allege any actual reliance, much less a reliance that was reasonable and diligent.

> **(c)** **The economic loss rule bars Plaintiff's claim for negligent misrepresentation.**

North Carolina has adopted the economic loss rule, which generally prohibits recovery in tort for purely economic loss. *Moore v. Coachmen Indus.*, 129 N.C. App. 389, 401, 499 S.E.2d 772, 780 (1998). The economic loss rule was first explained by the North Carolina Supreme Court in *North Carolina State Ports Auth. v. Lloyd A. Fry Roofing Co.*, 294 N.C. 73, 81, 240 S.E.2d 345 (1978), where the Court outlined the general rule that "[o]rdinarily, a breach of contract does not give rise to a tort action by the promisee against the promisor." The Fourth Circuit explained the underlying purpose of the doctrine in *Broussard v. Meineke Disc. Muffler*

---

[6] On a 12(b)(6) motion, the Court may consider "documents incorporated into the complaint by reference, and matters of which the court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Haberland v. Bulkeley*, 896 F. Supp. 2d 410, 419 (E.D.N.C. 2012) (judicial notice appropriate for SEC filings). Courts may also consider documents relied on in the complaint and integral to plaintiff's claims. *Phillips v. LCI Int'l, Inc.*, 190 F.3d 609, 624 (4th Cir. 1999). SEC filings give a "comprehensive overview of the company's business and financial condition." *United States ex rel. Rostholder v. Omnicare, Inc.*, 745 F.3d 694, 699, n.4 (4th Cir. 2014).

*Shops, Inc.*, 155 F.3d 331 (4th Cir. 1998), stating: "'parties to a contract do not thereby become each others' fiduciaries; [therefore,] they generally owe no special duty to one another beyond the terms of the contract.'" *Id*. at 347 (applying North Carolina law).

The economic loss rule applies to negligent misrepresentation, fraud and UDTPA claims. In *Mecklenburg Cnty. v. Nortel Gov't Solutions, Inc.*, No. 3:07-CV-00320-GCM, 2008 U.S. Dist. LEXIS 110381, at *4-5, 2008 WL 906319 (W.D.N.C. April 1, 2008), the plaintiff asserted negligent misrepresentation and deceptive trade practices claims where the defendant misrepresented its product delivery, testing, and implementation dates, and induced the plaintiff to continue payments under the contract. This Court, however, dismissed the tort claims on a Rule 12(b)(6) motion, holding that Plaintiff failed to allege identifiable and distinct facts, apart from a breach of contract, so as to overcome the economic loss doctrine. *Id*. at *14; *see also Johnson v. Sprint Solutions, Inc.*, No. 3:08-CV-00054, 2008 U.S. Dist. LEXIS 110205, at *11-12, 2008 WL 2949253 (W.D.N.C. July 29, 2008) (dismissing negligent misrepresentation claim); *US LEC Commc'ns, Inc. v. Qwest Commc'ns Corp.*, No. 3:05-CV-11, 2006 U.S. Dist. LEXIS 33705, at *5-8, 2006 WL 1367383 (W.D.N.C. 2006) (dismissing fraud, misrepresentation, and unfair trade practices counterclaims).

The economic loss rule also applies regardless of whether the defendant was a party to the underlying contract. *See Ellis v. Louisiana-Pacific Corp.*, No. 3:11-CV-191, 2011 U.S. Dist. LEXIS 129378, at *3, 2011 WL 5402878 (W.D.N.C. Nov. 8, 2011) (noting that North Carolina courts do not require privity of contract, but ask instead whether plaintiff has any basis to recover under contract law); *Kelly v. Ga.-Pac. LLC*, 671 F. Supp. 2d 785, 794 (E.D.N.C. 2009) (economic loss cannot be recovered in tort where plaintiff has contract remedy for the same damages).

15

The case at hand is similar to other cases decided in this District, such as *Mecklenberg Cnty.* and *Johnson*, that applied the economic loss rule to dismiss negligent misrepresentation and UDTPA claims. IPI seeks purely economic damages flowing from what is essentially a contract dispute. Though Hoku is not a party to the suit, the purported misrepresentations pertain directly to Hoku's obligations under the underlying IPI Contracts. Indeed, Plaintiff seeks to hold Defendants liable for Hoku's warranties in the MCSA – *see* Am. Cmplt. ¶ 114 – which only serves to emphasize that Plaintiff's claims lie in contract law, not in tort. IPI has remedies in contract law – the very claims IPI is already litigating in Idaho.

Underneath the Amended Complaint's labels of "negligent," "fraudulent" and "unfair" conduct, the sum of the alleged misrepresentations is simply that Hoku could and would pay overdue funds. Mere labels do not transform a breach of contract action into independent torts or trade practice claims. *E.g.*, *Broussard*, 155 F.3d at 347. Plaintiff alleges no facts distinct from the underlying contracts, and fails to overcome the underlying policy of the economic loss doctrine, which mandates dismissal.

### 2. Plaintiff's Unfair and Deceptive Trade Practices Count Fails to State a Valid Claim.

To state a claim under the UDTPA, a claimant must allege: 1) an unfair or deceptive act or practice, 2) in or affecting commerce, 3) which proximately caused injury to the plaintiff or his business. *See* N.C. Gen. Stat. § 75-1.1; *Walker v. Fleetwood Homes of N.C., Inc.*, 362 N.C. 63, 71-72, 653 S.E.2d 393, 399 (2007). The conduct must be immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers. *See*, *e.g.*, *Branch Banking & Trust Co. v. Thompson*, 107 N.C. App. 53, 61, 418 S.E.2d 694, 700 (1992). Whether an act or practice is unfair or deceptive is a question of law for the court to determine. *Wachovia Bank & Trust Co., N. A. v. Smith*, 44 N.C. App. 685, 689, 262 S.E.2d 646, 649 (1980).

While "commerce" is intended to include all types of business activities, "the Act does not apply to all wrongs in a business setting." *Carcano v. JBSS, LLC*, 200 N.C. App. 162, 172, 684 S.E.2d 41, 50 (2009). The unfair or deceptive act or practice must be more than a breach of contract. *Eastover Ridge, L.L.C. v. Metric Constructors, Inc.*, 139 N.C. App. 360, 367-68, 533 S.E.2d 827, 832-33 (2000). Rather, the plaintiff must show substantial aggravating circumstances attending the breach in order to recover, making it "'unlikely that an independent tort could arise in the course of contractual performance[.]'" *Id.* at 368 (quoting *Broussard*, 155 F.3d at 347).

Conclusory assertions of deception and misrepresentation do not convert contract claims into a UDTPA claim. *See Bartolomeo v. S.B. Thomas, Inc.*, 889 F.2d 530, 534-36 (4th Cir. 1989) (alleged deceptive and repeated assurances that a contract would not be terminated did not rise to the level of a UDTPA claim, despite aggravating factors including document tampering, delayed notice, and settlement pressure). Accordingly, the Fourth Circuit has warned that a district court should not allow a UDTPA claim to "piggyback" on what is, in essence, a breach of contract action. *Broussard*, 155 F.3d at 347. The Fourth Circuit observed in *Broussard* that, because the UDTPA opens the door for treble damages, a UDTPA count "constitutes a boilerplate claim in most every complaint based on a commercial or consumer transaction in North Carolina." *Id.*

The boilerplate UDTPA claim here fails as well. First, IPI fails to allege any actual statements by Mr. Liu, much less any conduct that would constitute the substantial aggravating circumstances required for a UDTPA claim. Second, the alleged misrepresentations were directly related to Hoku's payment under the contract, and even negligent or intentional actions relating to contract performance do not transform contract claims into independent torts or trade

practice claims. *Id.*, 155 F.3d at 347. Further demonstrating that this suit is a classic, disguised breach of contract claim, IPI claims damages because of "unpaid" invoices. Am. Cmplt. ¶¶ 302-04. Plaintiff should not be allowed to invoke the UDTPA as a means of reforming or avoiding what it now considers, in hindsight, a bad contract. If Hoku failed to fulfill its contractual obligations, IPI's remedy is contract damages, not a UDTPA claim with a blank check for treble damages against Hoku's officers. *See Broussard*, 155 F.3d at 347.

(a) **Plaintiff's UDTPA claim also fails because Plaintiff has not adequately pleaded falsity and reasonable reliance.**

Plaintiff's UDTPA claim is based on "misrepresentations" because Defendants purportedly were not "truthful." Am. Cmplt. ¶¶ 359-60. The gist of this claim, therefore, is once again misrepresentation. – just as is true with the negligent and intentional misrepresentation (a.k.a. fraud) claims. However, Plaintiff has failed to adequately plead the elements of falsity and reasonable reliance so as to support a plausible claim for misrepresentation, and thus the UDTPA claim should be dismissed for those reasons alone, just as is true with the misrepresentation claims. *See*, *e.g.*, Part III.C.1 above.

(b) **Plaintiff's UDTPA claim is barred by the economic loss rule.**

As with negligent misrepresentation, the economic loss rule bars UDTPA claims where the damage incurred is not separate and distinct from the damage arising from a breach of contract claim. *See Mecklenburg Cnty.*, No. 3:07-CV-00320-GCM, 2008 U.S. Dist. LEXIS 110381, at *14-15, 2008 WL 906319; *Ellis v. Louisiana-Pacific Corp.*, No. 3:11-CV-191, 2011 U.S. Dist. LEXIS 129378, at *4-5, 2011 WL 5402878 (W.D.N.C. Nov. 8, 2011). The alleged misrepresentations do not divorce IPI's claimed damages from the contract realm such that IPI has a valid UDTPA claim. Thus, the economic loss rule also vitiates the UDTPA count.

### 3. Plaintiff's Fraud Count Fails to State a Valid Claim.

As an initial matter, IPI's fraud claim should be dismissed under the economic loss doctrine and for failure to adequately plead reliance and falsity. *See*, *e.g.*, Part III.C.1 above. Further, where a party's allegations sound in fraud, the allegations must satisfy the heightened pleading standards of Fed. R. Civ. P. 9(b). *See Learning Works, Inc. v. Learning Annex, Inc.*, 830 F.2d 541, 546 (4th Cir. 1987) (all averments of fraud and circumstances constituting fraud must be stated with particularity, including reasonable reliance).

IPI's pleading deficiencies are most prominent in the fraud claim against Mr. Liu, who is not alleged to have made even a <u>single</u> statement to IPI or its agents. The vague and shifting assertion that Mr. Liu as a financial officer for Hoku "directed" or "approved" others' purported (mis)statements to IPI is nothing more than legal sleight of hand, and fails Rule 9(b)'s demand for particularity.

The fraud claim against Mr. Zhang should likewise be dismissed, because IPI does not plead adequate facts to show Mr. Zhang's alleged statements were false, or that Mr. Zhang knew them to be false. *See* Part III.C.1 above. Also, the alleged statements are entirely consistent with Hoku's financial condition as publicly and thoroughly disclosed in the 82-page 10-Q report that IPI cites. *See* Defs' Am. Mot. for Judicial Notice, Ex. 1, at 3-4, 17-20, 41-42.

### D. In the Alternative, Venue Should Be Transferred to the District of Idaho Pursuant to 28 U.S.C. § 1404(a) Because the Underlying Construction Project Occurred There and Plaintiff Agreed to Litigate in That Forum.

In the event the Court finds that personal jurisdiction and venue are proper in North Carolina, the Amended Complaint makes all the more clear that the interests of justice, fairness and convenience still compel transfer to Idaho pursuant to 28 USC §1404(a).

Section 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it

might have been brought." 28 U.S.C. § 1404(a). The purpose of Section 1404 is "to prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *See Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (internal quotations omitted). A district court has broad discretion when considering a motion to transfer. *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988). Indeed, Section 1404 places "discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Id.*

Here, there is no dispute that the District of Idaho can exercise personal jurisdiction over the Defendants because the claims arise from their contacts with, and work on, the Project in Pocatello. *See* Part II.A above. Also, the action "might have been brought" in Idaho because venue is proper there, under Section 1391(b), as the district where the alleged events and omissions giving rise to this action occurred. As detailed below, the factors weigh strongly in favor of transfer to the District of Idaho, which is where this action could have (and should have) been brought.

> ### 1.    <u>Convenience and the Interests of Justice Strongly Favor Transfer to the District of Idaho.</u>

On a Section 1404(a) motion, the Court must balance a variety of factors to determine whether convenience and the interests of justice favor transfer to the proposed district:

> (1) plaintiff's initial choice of the forum; (2) the relative ease of access to sources of proof; (3) availability of compulsory process for attendance of unwilling, and the costs of obtaining attendance of willing, witnesses; (4) possibility of view of premises, if view would be appropriate to the action; (5) enforceability of a judgment if one is obtained; (6) relative advantages and obstacles to a fair trial; (7) all other practical problems that make a trial easy, expeditious, and inexpensive; (8) administrative difficulties of court congestion; (9) local interests in having localized controversies settled at home; (10) the appropriateness in having the trial of a diversity case in a forum that is at home with the state law that must govern the action; and (11) avoidance of unnecessary problems with conflict of laws.

*Datasouth Computer Corp. v. Three Dimensional Technologies, Inc.*, 719 F. Supp. 446, 450-51 (W.D.N.C. 1989), citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 (1947).  "The analysis of these factors is qualitative, not merely quantitative." *Jim Crockett*, 751 F. Supp. at 96.

> (a)     **IPI's current choice of forum should be accorded no weight because IPI already selected Idaho as the forum for any Hoku-related claims.**

Plaintiff initially chose its forum as the District of Idaho by virtue of numerous forum selection clauses, such as those in the MCSA and the Tank Farm Agreement.  *See* Part II.B above.  The fact that Plaintiff selected Idaho as its venue in the underlying contracts is, standing alone, sufficient to transfer venue.  *Atl. Marine Constr. Co. v. United States Dist. Court*, 134 S.Ct. 568, 579 (2013) (Section 1404(a) requires that a forum selection clause be "given controlling weight in all but the most exceptional cases"); *see also Allen v. Lloyd's of London*, 94 F.3d 923, 928 (4th Cir. 1996) (transfer under forum selection clause is favored absent "grave inconvenience" to a party); *Carnival Cruise Lines v. Shute*, 499 U.S. 585, 594-95 (1991) (rejecting plaintiffs' inconvenience claim, and holding that Florida is not a "remote alien forum" for plaintiffs from the State of Washington where plaintiffs previously agreed to litigate there).

Plaintiff's decision to file suit in North Carolina is not entitled to deference, especially where the underlying contracts anticipated litigation in Idaho, and the alleged torts were committed in Idaho.  *See 3A Composites USA, Inc. v. United Indus., Inc.*, No. 5:13-CV-083-RLV-DCK, 2013 U.S. Dist. LEXIS 144789, at *13-14, 2013 WL 5536937 (W.D.N.C. Oct. 4, 2013) (deference further diminished when conduct giving rise to the complaint did not occur in the forum).  IPI should not be allowed to avoid its earlier choice of forum by the facile device of suing Hoku's officers, instead of Hoku.  Moreover, IPI cannot now claim it is inconvenient or unjust to have venue transferred to the forum that IPI already selected in its contracts.

The forum selection clause takes on an even greater significance when viewed in the larger business context. It would be imprudent for a company like Hoku to expose itself or its agents to litigation in every state where one of its contractors happens to be headquartered. The agreed-upon forum protects against having to litigate in many different states at once if payments to contractors should ever come into question. On this record, IPI's choice of forum merits little, if any, deference and the Idaho forum selection clause weighs heavily in favor of transfer.

### (b) Most if not all of the key evidence is in Idaho.

Transfer is appropriate where most of the evidence is located in the transferee district. *Jim Crockett,* 751 F. Supp. at 96. In this case, most if not all of the critical evidence is located with Hoku Corporation and Hoku Materials, both of which are under bankruptcy trust in Idaho.

IPI admits it is already litigating its lien claims in Idaho, and is conducting discovery into internal documents that are also relevant to IPI's tort claims against Defendants. Am. Cmplt. ¶¶ 299-301, 317-23. Such documents are not just relevant, but at the core of Plaintiff's claims. *Id.* Plaintiff also claims that the bankruptcy action itself, and the trustee's causes of action that might result, are relevant to Plaintiff's damages. Am. Cmplt. ¶¶ 326-27. The large part of discovery here, if Plaintiff's allegations survive, would involve obtaining such discovery and documents from the now-defunct Hoku entities, both of which are in bankruptcy in Idaho.[7] At a minimum, discovery would entail subpoenas for Hoku's internal records and connections to lenders, banks, contractors and to Tianwei. These documents are in Idaho. *See* Am. Cmplt. ¶¶ 1, 299.

Also, if litigation proceeds, a view of the polysilicon plant itself in Pocatello will be relevant to determine the extent and value of IPI's work. *See* Am. Cmplt. ¶ 222-25.

---

[7] *See In re Hoku Corporation*, No. 13-40838-JDP (Bankr. D. Idaho); *In re Hoku Materials*, No. 13-40837-JDP (Bankr. D. Idaho).

Logistically, IPI's claims should be handled in the District of Idaho, where the related evidence and property are situated, and where bankruptcy and lien proceedings are already under way.

(c)    **The District of Idaho can compel the attendance of significantly more non-party witnesses, resulting in a greater opportunity for a fair trial, and lowered costs of obtaining the attendance of the witnesses.**

Because Hoku Materials and the Project were situated in Idaho, non-party witnesses will more likely reside in Idaho rather than in North Carolina, where only the Plaintiff "resides." *See Jim Crockett*, 751 F. Supp. at 97. Pursuant to Rule 45 of the Federal Rules of Civil Procedure, witnesses are beyond the subpoena power of a court if trial is more than 100 miles beyond the place, or outside the state, where that person resides, is employed, or regularly transacts business in person. *See* Fed. R. Civ. P. 45(c)(1)(A) and (B). Here, construction on the Project began in Idaho in 2007 – three years before IPI joined the Project – and proceeded into 2012; it also involved over 100 other contractors or vendors. *See* Am. Cmplt. ¶¶ 35, 326. IPI further alleges that, in 2010, Hoku employees contacted IPI from Idaho. Am. Cmplt. ¶¶ 87. Owing to these facts, there are potentially many non-party witnesses residing in Idaho, including former Hoku employees and managers, Hoku contractors, and subcontractors for IPI. *E.g.,* Am. Cmplt. ¶¶ 96, 102, 109, 274.

Since this Court does not have subpoena power in a civil case over witnesses in Idaho, the parties will be forced to submit deposition testimony in lieu of live trial testimony. However, the use of deposition testimony is an inadequate substitute for live testimony at trial. *North Carolina v. Blackburn*, No. 5:06-CV-300-D, 2007 U.S. Dist. LEXIS 92131, at *3, 2007 WL 4458302 (E.D.N.C. Dec. 14, 2007); *see also Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 511 (1947). If witnesses cannot be compelled to testify in the chosen forum, but can be in the proposed

23

forum, this factor favors adjudication of the action in the proposed forum. *See*, *e.g.*, *Jim Crockett*, 751 F. Supp. at 97.

        **(d)**       **Litigating this action will be more efficient and less costly in Idaho.**

If proceeding in the proposed forum "would require less total expense," that factor weighs in favor of transfer. *See Jim Crockett*, 751 F. Supp. at 97. Here, this action would be significantly less expensive and more efficient for all parties if it proceeds in Idaho. As previously discussed, key evidence and witnesses are located primarily in Idaho. Proceeding in the District of Idaho would be most economical and practical for all parties.

        **(e)**       **Idaho has a greater interest in settling this controversy.**

To say that Idaho is invested in this dispute would be an understatement. The case centers on an unfinished $642 million polysilicon plant construction project in Pocatello, Idaho – a project heralded by a joint press release with the State of Idaho and involving special attention by all levels of Idaho government for taxes, permitting, and special foreign zoning for customs exceptions. Am. Cmplt. ¶¶ 7, 45, 51-54. Along with dozens of other contractors, IPI established operations in Pocatello to build (and profit from building) the large facility. *See* Am. Cmplt. ¶¶ 312, 316. This factor also favors transfer because the acts resulting in the claim occurred in Idaho, and related litigation is already well underway there. The Hoku bankruptcy and lien claims are currently pending in Idaho (*see* Am. Cmplt. 317-21), and the Defendants have already been sued in the District of Idaho by another of Hoku's contractors. *See* fn. 3 above.

Indeed, courts in the Fourth Circuit have recognized that "[w]hen related actions are pending in the transferee forum, the interest of justice is generally thought to weigh **heavily** in favor of transfer." *Kyle v. McDougall*, No. 5:14-CV-201-FL, 2014 U.S. Dist. LEXIS 133496, at *13-14, 2014 WL 4728816 (E.D.N.C. Sept. 23, 2014) (emphasis added); *see also Int'l Tel. &*

*Tel. Corp. v. Gen. Tel. & Electronics Corp.*, 527 F.2d 1162, 1164 (4th Cir. 1975). The fact that Plaintiff's head office is in North Carolina does not make Idaho any less the heart of this case.

The totality of factors warrants transfer of this action. Indeed, a majority of the factors strongly favor transfer, specifically: (1) Plaintiff's current forum choice carries no weight where Plaintiff agreed to litigate in Idaho for any claim arising from the IPI Contracts, and the claims did not arise in North Carolina; (2) Plaintiff is the only party residing in North Carolina, and non-party witnesses and evidence can be found almost exclusively in Idaho; (3) litigating in Idaho would be more efficient and would not result in defendants being deprived of a fair trial; and (4) Idaho has a much greater interest in settling this controversy.

## IV. <u>CONCLUSION</u>

Defendants Zhang and Liu respectfully request that the Amended Complaint be dismissed for lack of personal jurisdiction, improper venue, and failure to state a claim upon which relief can be granted. In the alternative, Defendants request this Court to withhold ruling on those motions, and transfer venue of this action to the District of Idaho.

Respectfully submitted, this 4th day of February, 2015.

s/ Jack S. Gjording
Jack S. Gjording, *pro hac vice*
Idaho State Bar No. 1105
jgjording@GJIdahoLaw.com

s/ James B. Smith
James B. Smith, *pro hac vice*
Idaho State Bar No. 9151
jsmith@GFIdahoLaw.com

GJORDING FOUSER, PLLC
121 N. 9th Street, Suite 600
Boise, ID  83702
Telephone:  208-336-9777
Facsimile:  208-336-9177

*Attorneys for Tao (Mike) Zhang and*
*Dayi (Sean) Liu*

s/ John W. Ormand III
John W. Ormand III
NC State Bar No. 14160
jormand@brookspierce.com
BROOKS, PIERCE, McLENDON,
   HUMPHREY & LEONARD, L.L.P.
P.O. Box 1800
Raleigh, NC  27602
Telephone:  919-839-0300
Facsimile:  919-839-0304

*Local Counsel for Tao (Mike) Zhang and*
*Dayi (Sean) Liu*

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF CAROLINA
CHARLOTTE DIVISION
No. 3:14-cv-0537-RJC-DCK

INDUSTRIAL PIPING, INC.,

        Plaintiff,

v.

TAO (MIKE) ZHANG, DAYI (SEAN) LIU,
SCOTT PAUL, TIANWEI NEW ENERGY
HOLDINGS CO., LTD, and DOES 1-10,

        Defendants.

**CERTIFICATE OF SERVICE**

I hereby certify that on February 4, 2015, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing: Elizabeth A. Martineau, Daniel J. Weber, Celeste K. Miller and Howard Holderness.

                              s/ John W. Ormand III
                              John W. Ormand III
                              NC State Bar No. 14160
                              jormand@brookspierce.com
                              BROOKS, PIERCE, McLENDON,
                                HUMPHREY & LEONARD, L.L.P.
                              P.O. Box 1800
                              Raleigh, NC 27602
                              Telephone: 919-839-0300
                              Facsimile: 919-839-0304

                              *Local Counsel for Tao (Mike) Zhang*
                              *and Dayi (Sean) Liu*