## Count IV- UDTPA Claim for Unfair Acts

362. The averments in paragraphs 1-361 are incorporated herein by reference.

363. As previously pled at ¶¶ 155 and 166, on the date Zhang executed the MCSA on October 6, 2011, Hoku Materials' financial condition was such that it had working capital deficiency of $231 million.

364. As previously pled at ¶¶ 116 and 167, the negative $231 million working capital balance was shown in a quarterly report filed with the SEC almost two months after Ransom executed the MCSA on September 28, 2011.

365. As previously pled at ¶¶ 175-77, the Hoku Corporation Executive Team (which included Paul and Zhang) recognized privately that Hoku Materials needed $300 million to be properly capitalized, and that Hoku Materials did not have the resources to be financially independent and be able to pay its debts as they matured.

366. As previously pled at ¶ 179, Liu worked with that Executive Team in preparing budgets, making cash flow projections, and attempting to assure that Hoku Materials had sufficient working capital to meet its obligations.

367. As previously pled at ¶ 180-181, Zhang, Liu and Paul knew of Hoku Materials' financial condition as of October 6, 2011, the day Zhang executed the MCSA.

368. As previously pled at ¶¶ 172-175, Zhang, Liu, and Paul privately discussed in the Executive Team meetings that Hoku Materials did not have the financial resources to meet risk to meet its financial obligations.

369. As previously pled at ¶ 182, Zhang, Liu, and Paul had a pecuniary interest in IPI continuing to work on the project. As previously alleged, their compensation and continued employment depended on the success of the project. Because Paul challenges in his Motion to

**Exhibit A**

Dismiss that sufficient motivation for Paul has not been alleged (see page 15 of Paul's Memorandum), IPI expounds on the allegation in ¶ 182 as follows. As of October 6, 2011, Paul and Zhang already owned tens of thousands shares of Hoku Corporation. For FY 2012 (ending March 31, 2012), Paul and Zhang, respectively, had a base salaries of $350,000 and $175,000 per year, long term incentive bonuses of $200,000 and $100,000, safety bonuses of $50,000 and $25,000, and restricted stock grants valued at $210,000 and $110,000, which would vest only if Paul and Zhang remained employed by Hoku Corporation as of March 31, 2012. Between the two of them, they had over $1 million riding on the prompt completion of the Plant. Though Liu did not have the same level of compensation, he knew his job depended on Hoku Materials' ability to complete the Plant. Zhang and Liu also were also employed by Tianwei as vice-general-manager and accounting manager, respectively, and Tianwei was putting tremendous pressure on them to complete the project as soon as possible.

370. As previously alleged at ¶ 207, Zhang, Liu, and Paul should have shut down construction as they saw the hole getting deeper until they could get a capital infusion, but they chose instead to do the opposite: issue new contracts for more work, including the MCSA, pursuant to which IPI subsequently performed $7 million worth of work for which it has not yet been paid.

371. As previously alleged in ¶ 1, Plaintiff claims relief under the UDTPA against Zhang, Liu, and Paul as officers and directors of Hoku Materials, and against Tianwei based on the doctrine of respondeat superior. The foregoing facts form the basis for an additional theory of relief as follows.

372. The decision by Zhang, Liu, and Paul to allow IPI to keep working despite the gross undercapitalization of Hoku Materials and Tianwei's decision not to provide the requested $300

million in working capital, constituted an unfair act "unfair acts or practices" in or affecting commerce under Section 75-1.1(a) of the UDTPA.

373. The decision by Zhang, Liu, and Paul "put their foot on the accelerator" and issue the $9 million MCSA to IPI, on top of the ongoing work IPI was doing on other contracts, constituted an unfair act "unfair acts or practices" in or affecting commerce under Section 75-1.1(a) of the UDTPA.

374. Defendants' made the foregoing decisions with a reckless indifference and conscious disregard to the harm that would be caused to IPI.

375. Defendants' unfair acts and practices proximately caused injury to IPI.

376. If Defendants had shut down construction on or about October 6, 2011, IPI would not have subsequently incurred in excess of $4 million in unpaid invoices on the Tank Farm Contract and Steel Supply Agreement in October, November, and December 2011 as previously alleged at ¶¶ 305-306.

377. If Defendants had refrained from issuing the MCSA, and IPI would not have subsequently incurred in excess of $7 million in unpaid invoices for MCSA work during October, November, and December 2011 as previously alleged at ¶¶ 207 and 305-306.

378. As previously explained at ¶ 295, ¶ 207 and ¶ 304, IPI only claims damages from October, November, and December, 2011.

379. As previously alleged at ¶¶ 200-203 and 206, that Defendants should have shut down or construction and not issued the MCSA as of October 6, 2011, is demonstrated by the pre-Tianwei management team's decision to declare a "short term liquidity crisis" when the working capital deficiency hit "only" $37 million in the summer of 2009 and shut down construction until additional working capital was obtained.

380. This Count IV is based on the unfair acts of Defendants on or before October 6, 2011, and does not rely on any subsequent misrepresentations the form the basis of Counts I, II, and III.

381. Paragraphs 362 to 380 are hereby incorporated by reference in Counts I, II, and III.

IPI is entitled to judgment jointly and severally against Defendants Zhang, Paul, Liu and Tianwei for their unfair acts and practices as alleged in Count IV under the North Carolina Unfair or Deceptive Trade Practices Act (North Carolina Code Section 75-1.1 et. seq.) for (a) damages incurred by IPI in excess of $11 million for work in October, November, and December 2011 plus Contingent Avoidance Damages, (b) three times the amount assessed by the jury as mandated by NC Code Section 75-16: "if damages are assessed in such case judgment shall be rendered in favor of the plaintiff and against the defendant for treble the amount fixed by the verdict," (c) attorney's fees as allowed by NC Code Section 75-16.1 or as otherwise allowed by law, and (d) pre-judgment interest as allowed by law.